158 N.J. Super. 542 (1978)
386 A.2d 893
IN THE MATTER OF THE COMMITMENT OF R.B., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1978.
Decided April 18, 1978.
*544 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Daniel Baer argued the cause for appellant R.B. (Mr. Stanley C. Van Ness, Public Advocate, Mr. Michael L. Perlin, Director, Division of Mental Health Advocacy, attorneys; Mr. Baer on the brief).
Mr. Peter G. Stewart argued the cause for respondent County of Essex (Mr. Neil G. Markowitz on the brief).
Mr. Steven Wallach, Deputy Attorney General, argued the cause for respondent State of New Jersey (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
PER CURIAM.
R.B. (patient) appeals from a final order of commitment entered by the Essex County Juvenile and Domestic Relations Court pursuant to R. 4:74-7(f). On the finding that she was dangerous to herself or others as the result of mental illness, the order committed her to Essex *545 County Hospital subject to a review three months thence. The basis of her appeal is that the evidence was insufficient to support an involuntary civil commitment.
Respondent County of Essex argues first that the appeal is moot by reason of the patient's administrative discharge by the hospital some nine weeks after the date of the commitment. Her return, however, to her pre-commitment personal status cannot, however, be regarded as rendering this controversy moot if serious collateral legal consequences nevertheless stem from the commitment order. Cf. In re Geraghty, 68 N.J. 209, 212 (1975). And see In re Ballay, 157 U.S. App. D.C. 59, 62-64, 482 F.2d 648, 651-653 (D.C. Cir.1973). And see generally as to the collateral legal consequence doctrine applied in the criminal law context, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). We are satisfied that there are such consequences here because of the lien against R.B.'s property filed by the county pursuant to N.J.S.A. 30:4-80.1 et seq., to secure a per diem rate of $66 for her care and maintenance by the hospital during the period of her commitment. Clearly, the patient is entitled to a credit for any sum included in the total lien amount representing a period during which she was improperly involuntarily confined, a sum here approaching $4,000.00. We need not, therefore, consider the viability or effect of other possible adverse consequences urged by her including social stigma, possible effects on future employability and deprivation of certain civil rights.
With respect to the merits of the appeal, we agree with the patient that he proofs were insufficient to warrant the commitment. The sole witness at the hearing was a psychiatrist who examined her several days before the hearing. His opinion that she was "potentially dangerous to others" was based essentially on this narrative:
Perhaps the most conspicuous feature to me was instant changes of moods where she could go from being quite pleasant and cooperative *546 to being almost in a rage. I think she even had some insight into that, but it was very conspicuous, and to me it was a sign of instability. A sign of a lack of control of these surges of emotion, and to me was very typical of the person who can become explosively combative or some other kind of physical acting out. Almost as if it were a chemical reaction. It happens so quickly.
After showing this kind of reaction in a matter of a second or two  she could become very calm and very cooperative. We could talk for a while. Then she would stand up and flush, and the reaction would come again.
I could easily relate what I saw to kinds of things that I saw in the commitment papers themselves.
I got the impression that she was beginning to have some insight into what was going on. She mentioned needing to have her medicine adjusted. She also mentioned having responded better to different medicine at a different time, and we talked about that and she is going to discuss that with her psychiatrist.
I felt that her most serious psychological liability at the time was this instant change of mood, which so seriously compromises her judgment. Because she acts  she can act actually without passing judgment. She can act impulsively, and perhaps even be very sorry afterwards.
I was encouraged by the fact that at the end of the interview she was talking in terms of getting her medication adjusted, and going outside.
I would not, myself, at this time, having seen her just that one time recommend that she be made voluntary. But I do see some signs that her condition may be settling down, and that her prognosis for this particular illness is beginning to look pretty good.
We have no doubt that the testimony here could have supported a conclusion that the patient was mentally ill and in need of psychiatric treatment. The patient's mental illness itself, however, is not the test for an involuntary civil commitment. The test is the likelihood that by reason of the patient's mental illness there is a substantial risk that if not confined he will constitute a danger to others or to himself. As made clear by State v. Krol, 68 N.J. 236 (1975):
Commitment requires that there be a substantial risk of dangerous conduct within the reasonably foreseeable future. Evaluation of the magnitude of the risk involves consideration both of the likelihood of dangerous conduct and the seriousness of the harm which may *547 ensue if such conduct takes place. * * * It is not sufficient that the state establish a possibility that defendant might commit some dangerous acts at some time in the indefinite future. The risk of danger, a product of the likelihood of such conduct and the degree of harm which may ensue, must be substantial within the reasonably foreseeable future. On the other hand, certainty of prediction is not required and cannot reasonably be expected.

* * * * * * * *
Determination of dangerousness involves prediction of defendant's future conduct rather than mere characterization of his past conduct. Nonetheless, defendant's past conduct is important evidence as to his probable future conduct. * * * It is appropriate for the court to give substantial weight to the nature and seriousness of the crime committed by defendant and its relationship to his present mental condition.
It should be emphasized that while courts in determining dangerousness should take full advantage of expert testimony presented by the State and by defendant, the decision is not one that can be left wholly to the technical expertise of the psychiatrists and psychologists. The determination of dangerousness involves a delicate balancing of society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy. This decision, while requiring the court to make use of the assistance which medical testimony may provide, is ultimately a legal one, not a medical one. [at 260-261; citations omitted]
In our view the requisite standard is not met merely by a psychiatric opinion of "potential" danger based on observed "mood swings" in a single interview without any factual support founded in the past actions of the patient or in prior manifestations of her mental illness and without any prognostication, whether or not based on factual data, of the character, imminence or likelihood of dangerous conduct which either society or the patient must be guarded against.
We are aware of the virtual revolution which has taken place during the last several years in the response of the legal community to mental health problems and of the fundamental and motivating concern of that revolution that persons suffering from mental illness not be deprived of personal liberty without the meticulous protection of both procedural and substantive due process. It is, of course, that *548 concern which demands the involuntary commitment standard of dangerousness. See generally, "Developments  Civil Commitment of the Mentally Ill," 87 Harv. L. Rev. 1190, 1236-1240 (1974). And see O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). State v. Krol and the 1975 adoption of revised civil commitment rules, R. 4:74-7, represent at least the initial response of this jurisdiction to the civil commitment problem and, clearly, their substantive dictates must be strictly complied with. Since the alleged dangerousness of this patient to herself or to others were she not confined was not adequately proved within the intendment of Krol, the commitment order must be reversed.
The patient not only contends that the commitment was factually unsupported but urges as well that we declare unconstitutional N.J.S.A. 30:4-44, which on its face appears to permit the entry of a voluntary commitment order on the finding of mental illness alone. This we decline to do. First, N.J.S.A. 30:4-44 no longer stands alone as a conclusive or exhaustive statement of the commitment standard. The statute obviously must be both interpreted and applied consistently with both State v. Krol and the implementing rules of court. We would moreover, as a matter of judicial restraint, decline to adjudicate questions as to the constitutionality of legislations where such adjudication is not necessary for the disposition of the controversy before us. Nor do we accept the patient's invitation that we now formulate a dangerousness standard which would be predicated on the prerequisite proof of an overt act already committed. We are not satisfied, based on this record, that the Krol formulation of dangerousness either requires or is susceptible to such a requirement. We are not dealing, when we speak to the psychiatric arts and sciences, in matters capable of absolute certainty, and we appreciate both the inherent difficulties we face in attempting to predict the course of human conduct and the inherent margin for error in the attempt to do so. We must nevertheless continue in *549 that attempt and that we can do only by insisting that our judicial predictions be made upon evaluation in each case of its own total factual complex and the force and persuasiveness of the professional opinion based thereon.
The order of commitment here entered is reversed.