210 N.J. Super. 1 (1985)
509 A.2d 184
IN THE MATTER OF THE COMMITMENT OF J.L.J.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1985.
Decided July 1, 1985.
*3 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
Richard I. Friedman, Assistant Deputy Public Advocate, argued the cause for appellant (Amy Piro, Acting Public Advocate, attorney).
Janet Berberian, Assistant Essex County Prosecutor, argued the cause for respondent (George L. Schneider, Essex County Prosecutor, attorney).
Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
GAYNOR, J.A.D.
This is an appeal from a Krol[1] review hearing determination that the committee, J.L.J., remain committed to the intensive treatment unit of the Trenton Psychiatric Hospital. It is contended on behalf of J.L.J. the court's decision was contrary to law and against the weight of the evidence and also that the court erred in refusing J.L.J. the opportunity to receive appropriate treatment and in unduly infringing upon his liberty.
On March 18, 1982, pursuant to N.J.S.A. 2C:4-8, J.L.J. was committed to the Trenton Psychiatric Hospital, Forensic Unit, having been found not guilty by reason of insanity of charges of murder, aggravated assault, aggravated arson and unlawful possession of a weapon. On July 29, 1982 the committee was transferred from the Vroom Building to the intensive treatment unit of the hospital. Periodic review hearings have been conducted since that date, including the most recent one conducted on January 11, 1985, and all have resulted in orders continuing J.L.J.'s commitment to the intensive treatment unit. The commitment *4 order entered August 22, 1983 was affirmed on an appeal to this court.[2]
The order of January 24, 1985 now being appealed from provides that J.L.J. remain committed to the intensive treatment unit of the hospital with no increase in his liberty or privileges without a specific order of the court, subsequent to a written request and report for an increase in privileges from the doctor and staff and a court hearing on the matter, with a further review of the commitment to be scheduled on or about January 17, 1986.
At the review hearing held on January 11, 1985 appellant sought a conditional discharge pending placement in a supervised setting with a full five-day per week treatment program or, alternatively, a transfer to a less restrictive and more appropriate environment in a civil hospital and the opportunity for appropriate treatment. He claimed the evidence warranted such a de-escalation of the restraints on his liberty and the failure to grant this relief was contrary to the evidence and the controlling law. Similar arguments are advanced on this appeal. In refuting these claims, the State contends the evidence supported the court's conclusion that there had been no material change in appellant's condition justifying a relaxation of the existing restraints on his liberty and the court properly continued J.L.J.'s commitment and treatment.
As we noted in ruling on appellant's previous appeal:
The scope of appellate review of judgments of commitment and continuing restraints for Krol patients is extremely narrow. State v. Fields, 77 N.J. at 311. An appellate court should give the utmost deference to the reviewing judge's determination of the appropriate balancing of societal interests and individual liberty. 77 N.J. at 311. That determination will be subject to modification only where the record reveals a clear mistake in the reviewing judge's broad discretion in evaluating the patient's current condition and formulating a suitable order. 77 N.J. at 311. [Matter of Commitment of J.L.J., 196 N.J. Super. at 49.]
*5 We are satisfied from our review of the record that the trial judge did not err in evaluating the committee's present condition and concluding that his commitment should be continued. There was evidence before the court that J.L.J.'s condition was diagnosed as schizophrenia in partial remission with associated depression and alcohol and drug abuse; that his judgment was impaired, he lacked insight and motivation, was uncommunicative, lazy, had made no progress in the therapy programs which were available to him, and had demonstrated no change in his condition since the last review hearing. Also, while appellant's expert opined that J.L.J. was not dangerous and could properly be discharged to his home with daily out-patient treatment, the State's psychiatrist indicated that the present condition of J.L.J.'s remission was due to the medication being administered to him in the hospital and that he could not predict his conduct if he were in a less structured environment. The evaluation of such evidence was within the discretion of the reviewing judge and we discern no clear mistake in his conclusion that it was probable the committee would not continue the required medication if the present restraints on his liberty were relaxed and in such case would be potentially dangerous to others. See State v. Fields, 77 N.J. 282, 311 (1978).
Appellant stresses the unanimity of the psychiatrists' testimony as to the absence of any psychotic symptoms in support of the claim that he does not present a danger to others. However, as we learn from State v. Krol, 68 N.J. 236, 259-261 (1975), the determination of dangerousness is for the court, not the psychiatrists:
It should be emphasized that while courts in determining dangerousness should take full advantage of expert testimony presented by the State and by defendant, the decision is not one that can be left wholly to the technical expertise of the psychiatrists and psychologists. The determination of dangerousness involves a delicate balancing of society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy. This decision, while requiring the court to make use of the assistance *6 which medical testimony may provide, is ultimately a legal one, not a medical one. 68 N.J. at 261 [citations omitted].
To warrant continuance of the current restraints the State need only demonstrate in a review proceeding "... that there has been no material change in the committee's condition and degree of potential dangerousness which would warrant a relaxation of the prevailing level of restraints upon his liberty." State v. Fields, 77 N.J. at 302. This standard was met in the challenged review hearing respecting J.L.J.'s commitment status.
However, we are concerned that the reviewing judge may not have given due consideration to appellant's need for more appropriate treatment of his mental condition. The medical testimony offered by the State and appellant clearly indicated that the treatment offered in the intensive treatment unit was not benefiting J.L.J. Dr. Blechman, the State psychiatrist recommended that "he be transferred to another unit where a different therapeutic approach can be tried" and stated "[H]e is in no way appropriate to the methods we have in our [intensive treatment] unit." This was also the opinion of Dr. Cuvin, appellant's psychiatrist, who explained:
The only modality that is utilized by the Intensive Treatment Unit is behavior modification. They have no other treatments. He doesn't belong there. That is the wrong place. He is just serving time. He will be unmotivated next year and the year after and the year after as long as he is locked in that unit.
It is beyond question that those committed to mental institutions are entitled to receive such treatment as will provide them a realistic opportunity to be cured or to improve their condition and that this right to treatment is an affirmative obligation on behalf of the State. State v. Carter, 64 N.J. 382, 393-394 (1974); In re D.D., 118 N.J. Super. 1, 6 (App.Div. 1971). The evidence before the court certainly suggested that the treatment afforded to J.L.J. was not providing him with a meaningful opportunity for cure or improvement. While the court's order permits an application for a rehearing for a change of supervision upon request of the hospital staff, in our *7 view the question of an appropriate treatment plan for J.L.J. should not await a possible rehearing. This is a matter which requires a more prompt and certain resolution.
Accordingly, the continued commitment of J.L.J. to the Trenton Psychiatric Hospital, as provided for in the order of January 24, 1985, is affirmed and the matter is remanded to the Superior Court, Law Division, Essex County, for such further proceedings as may be deemed necessary for consideration and implementation of an appropriate course of psychiatric treatment for J.L.J. at the Trenton Psychiatric Hospital. We do not retain jurisdiction.
NOTES
[1] State v. Krol, 68 N.J. 236 (1975).
[2] In the Matter of the Commitment of J.L.J., 196 N.J. Super. 34 (App.Div. 1984).