622 A.2d 1311

IN THE MATTER OF THE COMMITMENT OF ROBERT S.

Superior Court of New Jersey
Appellate Division

Argued September 30, 1992—Decided October 29, 1992.

Before Judges J.H. COLEMAN, SHEBELL and ARNOLD M. STEIN.

*Lorraine M. Gormley*, Assistant Deputy Public Advocate, argued the cause for appellant (*Zulima V. Farber*, Public Defender, attorney; *Ms. Gormley*, of counsel and on the brief and reply brief).

*Stephen J. Edelstein*, Essex County Counsel, filed a brief on behalf of respondent (*Wanda Douglas Thigpen*, Assistant County Counsel, on the letter brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

We reverse the order continuing appellant's involuntary commitment to Lyons Veterans Administration Medical Center following his initial *ex parte* commitment to Newark Beth Israel Hospital. The evidence did not support a finding "by clear and convincing evidence that [appellant] needs continued involuntary commitment,...." *N.J.S.A.* 30:4–27.15a.

Appellant was released from confinement approximately two weeks after his initial review hearing. He successfully completed his court-ordered ninety days of outpatient therapy. Because his mental illness is classified as a service-connected disability, he has no financial obligation to Lyons, his place of continued involuntary commitment. *See In re Commitment of A.A.*, 252 *N.J.Super.* 170, 172 n. 1, 599 *A.*2d 573 (App.Div.1991) (involuntary committee's release from confinement did not moot his appeal from the order of confinement because his property was subject to a lien for the cost of his hospital care).

Nevertheless, we will not treat this matter as moot. Appellant's involuntary commitment has potential ramifications if the need again arises to evaluate his mental condition. *See, e.g., N.J.S.A.* 30:4–27.5 which provides that "[i]f a person has been admitted three times ... at a short-term care facility ... consideration shall be given to not placing the person in a short-term care facility." In light of appellant's three prior commitments, this recent confinement might have an effect upon whether he might some day be placed in a long-term rather than a short-term facility.

On March 24, 1992, appellant was involuntarily committed to Newark Beth Israel Hospital by an *ex parte* temporary order of commitment. The initial commitment hearing, scheduled for April 8, 1992, was adjourned because appellant was transferred to Lyons Veterans Administration Medical Center. At the rescheduled hearing on April 16, 1992, the reviewing judge ordered continuation of appellant's involuntary confinement. On May 1, 1992, the judge discharged appellant on condition

that he undergo outpatient treatment for ninety days at the East Orange VA Medical Center.

■ Appellant is a forty-six-year-old Vietnam veteran who lives at home with his mother. For approximately the last eight years he has suffered from a mental illness for which he was voluntarily hospitalized on three prior occasions, most recently at Lyons in December 1990. Appellant regularly takes medication and also receives outpatient treatment at the East Orange VA hospital.

Dr. Dela Cruz, a psychiatrist at Lyons, treated appellant after his transfer to that facility in April 1992. Her initial diagnosis was schizophrenia paranoid, chronic type. That diagnosis remained the same on the hearing date. The doctor testified that appellant had been very noncommunicative while under her care, making it difficult for her to evaluate his condition. She recommended continuation of appellant's commitment.

The doctor's recommendation was based primarily on screening certificates submitted in support of the application for appellant's *ex parte* temporary commitment to Beth Israel. Dr. Dela Cruz testified that appellant was not suicidal, but she believed that appellant was an "indirect" danger to himself because of his erratic behavior. She noted two instances of this behavior: he threw nails on the floor and walked on them, and he left the gas stove lit when he was not at home. Dr. Dela Cruz stated that her opinion of these events was based on the screening certificates.

Dr. Dela Cruz also testified that, according to the screening certificates, appellant had stopped taking his medication shortly before his commitment. Since his commitment, however, appellant was very cooperative about taking his medicine, and agreed that he would continue to take it upon his discharge from the hospital.

Dr. Dela Cruz learned that appellant had some type of "outburst" while at Lyons, in which he "apparently became

upset and tried to throw a wooden tray." The doctor's testimony about this outburst was based on a record of someone else's account of the incident. Whatever the details of the episode, no person or property was harmed by appellant's actions.

Appellant's mother also testified about the incidents involving the nails and the gas stove. She stated that appellant had spilled some nails from his tool box and stepped on them because he did not pick them up. She explained that appellant turned the oven on when the house got chilly and she was not home to turn on the heat. She stated that appellant had never been assaultive toward her. She attributed appellant's psychological problems to flashbacks on his military service in Vietnam. She worried about appellant's safety when he experienced these flashbacks because he would leave the house, get in his car and stay away for long periods of time. She testified that he had never caused harm to himself or others when he went for these rides. Dr. Dela Cruz had no personal knowledge of appellant's flashbacks because the records she reviewed did not contain this information.

The reviewing judge adopted the findings of Dr. Dela Cruz in concluding that appellant was "indirectly" a danger to himself and to others. He ordered continued commitment until another hearing two weeks later. At the subsequent hearing, Dr. Dela Cruz testified that appellant was not dangerous to himself or to others or property. The judge discharged appellant on condition that he complete ninety days outpatient treatment at the East Orange VA hospital. We were advised at oral argument that appellant has successfully completed this outpatient therapy.

The evidence presented at the hearing was not sufficient to meet the statutory and constitutional requirement of proof by clear and convincing evidence that appellant needed continued commitment. *N.J.S.A.* 30:4–27.15a; *In re S.L.*, 94 *N.J.* 128, 137–38, 462 *A.2d* 1252 (1983).

> Evidence is "clear and convincing" when it produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Jobes,* 108 *N.J.* 394, 407–08, 529 *A.*2d 434 (1987) (quoting *State v. Hodge,* 95 *N.J.* 369, 376, 471 *A.*2d 389 (1984) (citations omitted)).]

*N.J.S.A.* 30:4–27.2 defines the phrases "dangerous to self" and "dangerous to others or property."

> h. "Dangerous to self" means that by reason of mental illness the person has threatened or attempted suicide or serious bodily harm, or has behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical debilitation or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential medical care or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available.

> i. "Dangerous to others or property" means that by reason of mental illness there is a substantial likelihood that the person will inflict serious bodily harm upon another person or cause serious property damage within the reasonably foreseeable future. This determination shall take into account a person's history, recent behavior and any recent act or threat.

The evidence presented to the reviewing judge fell short of meeting the clear and convincing standard required for involuntary commitment. *In re Commitment of A.A., supra,* 252 *N.J.Super.* at 179, 599 *A.*2d 573 (erratic behavior, abusive language and previous commitments insufficient to meet burden of finding that patient was danger to himself or others within reasonably foreseeable future); *In re R.B.,* 158 *N.J.Super.* 542, 547, 386 *A.*2d 893 (App.Div.1978) (evidence of mood swings insufficient to sustain psychiatric opinion that patient was "explosively combative and dangerous to others").

We make no determination as to whether appellant should have been initially committed to Newark Beth Israel Hospital. The judge's findings, based on the testimony of Dr. Dela Cruz that appellant was "indirectly" a danger to himself or to others, did not satisfy the required standard for involuntary commitment: that there is a substantial risk of dangerous conduct

within the reasonably foreseeable future. *State v. Krol,* 68 *N.J.* 236, 260, 344 *A.*2d 289 (1975).

Reversed and remanded to the Law Division for an order vacating the order of continued commitment.