285 N.J. Super. 481 (1995)
667 A.2d 385
IN THE MATTER OF THE COMMITMENT OF D.M., PETITIONER-APPELLANT. IN THE MATTER OF THE COMMITMENT OF F.J., PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1995.
Decided November 28, 1995.
*483 Before Judges MICHELS and KIMMELMAN.
Lorraine M. Gormley, Deputy Public Advocate, argued the cause for appellant D.M. (Susan L. Reisner, Public Defender, attorney; Alma L. Saravia, Director, Division of Mental Health Advocacy, and Ms. Gormley, of counsel; Ms. Gormley, on the brief).
George A. Nyktas, Assistant Mercer County Counsel, argued the cause for respondent Mercer County (Alfred B. Vuocolo, Jr., *484 Mercer County Counsel, attorney; Jeanne E. Gorrissen, Assistant Mercer County Counsel, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
In these consolidated appeals, D.M. appeals from a civil commitment order of the Law Division that continued his involuntary commitment at Trenton Psychiatric Hospital (Trenton Hospital) subject to a review hearing in two months. D.M. seeks a reversal of the civil commitment order and the entry of an order placing him on conditional extension pending placement status, contending that (1) the trial court exceeded its authority under State commitment statutes by involuntarily detaining him at a State psychiatric facility without clear and convincing evidence that he presented a danger of serious physical harm to himself within the reasonably foreseeable future; (2) the mere possibility that he may exercise his right to accept or refuse neuroleptic medication does not constitute clear and convincing evidence that he presented a danger of serious physical harm to himself within the reasonably foreseeable future; (3) the trial court erred in continuing his commitment where the State failed to present clear and convincing evidence that community services were not appropriate or available to meet his mental health care needs; and (4) the trial court violated his constitutional right to due process by involuntarily detaining him at a State psychiatric facility absent clear and convincing evidence that he presented a danger to himself, others or property. While this appeal was pending, D.M., following a review hearing, was placed on conditional extension pending placement status and released to a supervised residential health care facility.
In the second matter at issue in these consolidated appeals, F.J. appeals from a civil commitment order of the Law Division that continued her involuntary commitment at Trenton Hospital. While this appeal was pending, F.J., following a review hearing, was placed on conditional extension pending placement status and *485 was subsequently administratively discharged. F.J. seeks a reversal of the civil commitment order, contending that (1) the trial court exceeded its statutory and constitutional authority by involuntarily committing her in the absence of clear and convincing evidence that she presented a danger of serious physical harm to herself within the reasonably foreseeable future; (2) her due process rights were violated because her continued confinement was not reasonably related to the State's interest in protecting her from harm or the State's interest in protecting others and their property; and (3) the trial court erred in continuing her commitment where the State failed to present clear and convincing evidence that community services were not appropriate or available to meet her mental health care needs.[1]
We are satisfied from our study of the record and the arguments presented, that the trial court orders continuing the involuntary commitment of both D.M. and F.J. at Trenton Hospital are based on findings of fact which are adequately supported by the evidence and that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(A) and (E). Therefore, we affirm the orders continuing D.M.'s and F.J.'s commitments at Trenton Hospital substantially for the reasons expressed by Judge Fox in his oral opinions of March 24, 1994 and September 29, 1994, respectively.
*486 We emphasize that the involuntary commitment of an individual "is a profound and dramatic curtailment of a person's liberty and as such requires meticulous adherence to statutory and constitutional criteria." Fair Oaks Hosp. v. Pocrass, 266 N.J. Super. 140, 149, 628 A.2d 829 (Law Div. 1993). See also Ziemba v. Riverview Medical Center, 275 N.J. Super. 293, 299, 645 A.2d 1276 (App.Div. 1994). Indeed, the Supreme Court of New Jersey has held that
[p]ersonal liberty and autonomy are of too great value to be sacrificed to protect society against the possibility of future behavior which some may find odd, disagreeable, or offensive, or even against the possibility of future non-dangerous acts which would be ground for criminal prosecution if actually committed.
[State v. Krol, 68 N.J. 236, 259, 344 A.2d 289 (1975).]
The policy behind involuntary civil commitment is codified at N.J.S.A. 30:4-27.1b, which states:
Because involuntary commitment entails certain deprivations of liberty, it is necessary that State law balance the basic value of liberty with the need for safety and treatment, a balance that is difficult to effect because of the limited ability to predict behavior; and, therefore, it is necessary that State law provide clear standards and procedural safeguards that ensure that only those persons who are dangerous to themselves, to others or to property, are involuntarily committed.
In light of this policy, our courts have taken a cautious approach to the involuntary commitment of individuals. "The civil commitment process must be narrowly circumscribed because of the extraordinary degree of state control it exerts over a citizen's autonomy." In re S.L., 94 N.J. 128, 139, 462 A.2d 1252 (1983). See also O'Connor v. Donaldson, 422 U.S. 563, 575-76, 95 S.Ct. 2486, 2493-94, 45 L.Ed.2d 396, 406-07 (1975); In re Commitment of A.A., 252 N.J. Super. 170, 178, 599 A.2d 573 (App.Div. 1991).
The standards for involuntary commitment are codified at N.J.S.A. 30:4-27.1 to N.J.S.A. 30:4-27.23. N.J.S.A. 30:4-27.15a, as amended, sets forth the circumstances under which the involuntary commitment of a patient may be continued, and provides:
If the court finds by clear and convincing evidence that the patient needs continued involuntary commitment, it shall issue an order authorizing the involuntary commitment of the patient and shall schedule a subsequent court hearing in the event the patient is not administratively discharged pursuant to section 17 of P.L. 1987, c. 116 (C.30:4-27.17) prior thereto.
*487 R. 4:74-7(f), which provides further guidance, in pertinent part states:
The court shall enter an order authorizing the involuntary commitment of an adult patient if it finds, by clear and convincing evidence presented at the hearing that the patient is in need of continued involuntary commitment by reason of the fact that (1) the patient is mentally ill, (2) mental illness causes the patient to be dangerous to self or dangerous to others or property as defined in N.J.S.A. 30:4-27.2h and -.2i, (3) the patient is unwilling to be admitted to a facility for voluntary care, and (4) the patient needs care at a short-term care or psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the patient's mental health care needs. Alternatively, if the patient is a minor, the order may be entered if the court finds that the patient is in need of intensive psychiatric therapy that cannot practically or feasibly be rendered in the home or in the community or on an outpatient basis.
If the patient is an adult, the order shall provide for periodic reviews of the commitment no later than (1) three months from the date of the first hearing, and (2) nine months from the date of the first hearing, and (3) 12 months from the date of the first hearing, and (4) at least annually thereafter, if the patient is not sooner discharged. The court may schedule additional review hearings but, except in extraordinary circumstances, not more than once every 30 days. If the court determines at a review hearing that involuntary commitment shall be continued, it shall execute a new order. If the patient is a minor, the commitment shall be reviewed every three months from the date of its entry until the minor is discharged or reaches majority.
The State bears the burden of proving the ground for the continued involuntary commitment of an individual. In State v. Fields, 77 N.J. 282, 300, 390 A.2d 574 (1978), our Supreme Court held that the State must "reestablish its authority to restrict the liberty of the committee by showing that his present condition warrants their continuance[,]" stating:
The burden must be placed on the state to prove the necessity of stripping the citizen of one of his most fundamental rights, and the risk of error must rest on the state. Since the state has no greater right to confine a patient after the validity of the original commitment has expired than it does to commit him in the first place, the state must bear the burden of proving the necessity of recommitment, just as it bears the burden of proving the necessity for commitment.
[Id. at 300, 390 A.2d 574 (citing Fasulo v. Arafeh, 173 Conn. 473, 480-481, 378 A.2d 553, 557 (1977)).]
Under N.J.S.A. 30:4-27.15a, as well as R. 4:74-7(f), the State's burden can only be satisfied "by clear and convincing evidence rather than by a mere preponderance of the evidence." In re Savage, 233 N.J. Super. 356, 359, 558 A.2d 1357 (App.Div. 1989), *488 certif. denied, 122 N.J. 348, 585 A.2d 360 (1990). See also Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 1812-1813, 60 L.Ed.2d 323, 335 (1979); In re Robert S., 263 N.J. Super. 307, 311-312, 622 A.2d 1311 (App.Div. 1992); In re Newsome, 176 N.J. Super. 511, 517, 424 A.2d 222 (App.Div. 1980); In re Commitment of A.A., supra, 252 N.J. Super. at 178, 599 A.2d 573.
Our Supreme Court has held that evidence is "clear and convincing" when it
produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.
[In re Jobes, 108 N.J. 394, 407-08, 529 A.2d 434 (1987) (citations omitted) (quoting State v. Hodge, 95 N.J. 369, 376, 471 A.2d 389 (1984)).]
The definition of other terms is also required. Significantly, the term, "in need of involuntary commitment"
means that an adult who is mentally ill, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to be admitted to a facility voluntarily for care, and who needs care at a short-term care, psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the person's mental needs.
[N.J.S.A. 30:4-27.2m. See also R. 4:74-7(f).]
"Dangerous to self"
means that by reason of mental illness the person has threatened or attempted suicide or serious bodily harm, or has behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical debilitation or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential medical care or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available.
[N.J.S.A. 30:4-27.2h.]
"Dangerous to others or property"
means that by reason of mental illness there is a substantial likelihood that the person will inflict serious bodily harm upon another person or cause serious property damage within the reasonably foreseeable future. This determination shall take into account a person's history, recent behavior and any recent act or threat.
[N.J.S.A 30:4-27.2i.]
*489 Armed with these principles, we are convinced in light of the limited scope of our review that the trial court did not mistakenly exercise its broad discretion in evaluating D.M.'s present condition and continuing his involuntary commitment at Trenton Hospital. See State v. Fields, supra, 77 N.J. at 311, 390 A.2d 574. See also In re Commitment of J.L.J., 210 N.J. Super. 1, 4, 509 A.2d 184 (App.Div. 1985); In re Commitment of J.L.J., 196 N.J. Super. 34, 49, 481 A.2d 563 (App.Div. 1984), certif. denied, 101 N.J. 209, 210, 101 A.2d 893, 894 (1985).
Dr. Fuchanan, a psychiatrist at Trenton Hospital, diagnosed D.M. with "[s]chizophrenia, chronic undifferentiated type" for which he received Prolixin and Cogentin by tablets and Prolixin Deconate by injection. D.M. was given the injections because of poor compliance with his medications. According to Dr. Fuchanan, D.M.'s insight is "[v]ery poor" and "[h]e doesn't think he need[s] medication." Dr. Fuchanan testified that D.M. was admitted to Trenton Hospital seventeen times since September 1992, was unable to take care of himself, and because of his mental illness presented a danger to himself. Furthermore, Dr. Fuchanan stated that because D.M. has a history of running away from Trenton Hospital, the team monitoring his condition was reluctant to give him a Level Three status, which would have afforded him more freedom at Trenton Hospital. Finally, Dr. Fuchanan was of the opinion that D.M.'s prognosis was "guarded" because of his long history of psychiatric illness and, thus, recommended continued commitment with a review in two to three months.
In sum, the State established by clear and convincing evidence that D.M. was suffering from a mental illness and was likely to pose a substantial risk of danger to himself or to society within the reasonably foreseeable future. See State v. Krol, supra, 68 N.J. at 257-60, 344 A.2d 289. See also In re Commitment of A.A., supra, 252 N.J. Super. at 178, 599 A.2d 573; In re Commitment of B.S., 213 N.J. Super. 243, 248, 517 A.2d 146 (App.Div. 1986). Thus, we are satisfied that there is no sound reason or justification for us to interfere with the trial court's order that, subject to a review *490 hearing in two months, continued D.M.'s involuntary commitment at Trenton Hospital.
We are equally convinced that the trial court did not mistakenly exercise its broad discretion in evaluating F.J.'s present condition and continuing her involuntary commitment at Trenton Hospital. Dr. Fuchanan diagnosed F.J.'s condition as "[s]chizophrenia, chronic, paranoid type," with a history of substance abuse. Dr. Fuchanan explained that F.J. was given Haldol three times a day and Haldol Deconate injections the frequency of which had just been increased to every four weeks. She explained that one of the factors considered in her recommendation that F.J. remain at Trenton Hospital was the need for observation of F.J.'s adjustment to her increased dosage. Dr. Fuchanan also testified that F.J. was placed on moderate suicide risk precautions because she had threatened suicide when she was told she could not visit her family. Although F.J. insisted that she only made the suicide threats out of anger and had no intention of hurting herself, she admitted that approximately four years ago she had actually tried to hurt herself.
Dr. Fuchanan testified that if F.J. continued to take her medicine she would be in better control. Nonetheless, the doctor was of the opinion that F.J. was a threat to herself and others because she was still hallucinating. She recommended F.J.'s continued commitment subject to review.
Here, there was clear and convincing evidence before the trial court that F.J. was suffering from a mental illness and that she posed a substantial risk of danger to herself or others within the reasonably foreseeable future, thus warranting the trial court's order continuing her involuntary commitment at Trenton Hospital. There is no sound reason or justification for us to interfere therewith.
Accordingly, the orders continuing the involuntary commitment of both D.M. and F.J. under review are affirmed.
NOTES
[1] We note that neither F.J.'s subsequent administrative discharge nor D.M.'s subsequent conditional extension pending placement status and release to a residential health care facility rendered their respective appeals moot. This conclusion stems from the fact that both patients remain financially liable for the cost of their hospitalization for the period of any alleged wrongful confinement. See In re Commitment of Raymond S., 263 N.J. Super. 428, 431, n. 1, 623 A.2d 249 (App.Div. 1993). See also In re Commitment of A.A., 252 N.J. Super. 170, 172 n. 1, 599 A.2d 573 (App.Div. 1991); In re R.B., 158 N.J. Super. 542, 545, 386 A.2d 893 (App.Div. 1978); In re Geraghty, 68 N.J. 209, 212, 343 A.2d 737 (1975). Moreover, as we noted in In re Robert S., 263 N.J. Super. 307, 309, 622 A.2d 1311 (App.Div. 1992), a patient's "involuntary commitment has potential ramifications if the need again arises to evaluate [her] mental condition." These potential ramifications arise from N.J.S.A. 30:4-27.5b, which provides in pertinent part that "[i]f a person has been admitted three times.... at a short-term care facility ... consideration shall be given to not placing the person in a short-term care facility."