295 N.J. Super. 75 (1996)
684 A.2d 925
IN THE MATTER OF THE COMMITMENT OF J.B.
IN THE MATTER OF THE COMMITMENT OF J.H.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1996.
Decided October 23, 1996.
*77 Before Judges KLEINER and BILDER.
Theodore S. Novak, Managing Attorney, Division of Mental Health & Guardianship Advocacy, Office of the Public Defender, argued the cause for appellant J.B. (Susan L. Reisner, Public Defender, attorney; Mr. Novak, of counsel; Lorraine M. Gormley and Dolores L. Owens, on the brief).
William F. Culleton, Jr., Staff Attorney, Division of Mental Health & Guardianship Advocacy, Office of the Public Defender, argued the cause for appellant J.H. (Susan L. Reisner, Public Defender, attorney; Mr. Culleton, of counsel; Lorraine M. Gormley and Dolores L. Owens, on the brief).
No briefs were filed on behalf of respondents Atlantic County or Camden County.
BILDER, J.A.D. (Retired and Temporarily Assigned on Recall).
J.B. was confined to Ancora Psychiatric Hospital (Ancora) on December 1, 1995, pursuant to a temporary order of commitment. On December 15, 1995, an initial commitment hearing was held which resulted in an order of involuntary commitment from which J.B. appeals.
J.H. was confined to Ancora on December 12, 1995, pursuant to a temporary order of commitment. On December 22, 1995 an initial commitment hearing was held which resulted in an order of involuntary commitment from which J.H. appeals.
Their two appeals have been consolidated for the purpose of this opinion.

I.
Involuntary commitment to a mental hospital is state action which deprives the committee of important liberty interests and, as such, triggers significant *78 due process requirements. In re S.L., 94 N.J. 128, 137 [462 A.2d 1252] (1983). In light of the committee's significant constitutionally protected interests, our Legislature and the New Jersey Supreme Court have promulgated statutes and rules to ensure that no person is involuntarily committed to a psychiatric institution without having been afforded procedural and substantive due process. N.J.S.A. 30:4-27.1 to 27.23; R. 4:74-7. Consequently, a person may not be involuntarily committed to a psychiatric facility without proof by clear and convincing evidence that the individual has a mental illness, and the mental illness causes the patient to be dangerous to self, to others, or to property. N.J.S.A. 30:4-27.9(b); N.J.S.A. 30:4-27.15(a); R. 4:74-7(f).
[Matter of Commitment of Raymond S., 263 N.J. Super. 428, 431, 623 A.2d 249 (App.Div. 1993).]

II.
The contentions of both appellants are similar. Essentially they challenge the hearsay nature of the evidence produced in support of the commitments and contend that there was insufficient evidence to support a finding of dangerousness under the clear and convincing standard required by case law and statute. We agree.
In both cases the commitments were supported by the testimony of an Ancora psychiatrist, Dr. Manuel Ting. In both cases Dr. Ting explicitly testified that he was relying on the screening document prepared by the screening service, N.J.S.A. 30:4-27.2(z), which certified that the patient was in need of involuntary civil commitment, N.J.S.A. 30:4-27.5(b). In both cases the document was never available for cross-examination. It was not produced and, a fortiori, not put in evidence. While such a document may be admissible as a business record, see N.J.R.E. 803(c)(6), some of the entries may be inadmissible because they are themselves inadmissible hearsay. See Biunno, Current N.J. Rules of Evidence, comment 4 on N.J.R.E. 803(c)(6)(1996) at page 828. In both cases Dr. Ting relied on statements of conduct without any knowledge of the source nor any knowledge as to when the alleged conduct took place. He testified in both matters that he had made no effort to make inquiry of the screener but relied exclusively on the written report. It was impossible for the trial judge to consider the trustworthiness of "the sources of information or the *79 method, purpose or circumstances of preparation." See Feldman v. Lederle Laboratories, 132 N.J. 339, 354, 625 A.2d 1066 (1993); State v. Hollander, 201 N.J. Super. 453, 482, 493 A.2d 563 (App. Div. 1985), certif. den., 101 N.J. 335, 501 A.2d 983 (1985); N.J.R.E. 803(c)(6).
Similarly inadmissible as hearsay in the J.B. matter was the testimony of Ms. Forrest, an Ancora social worker, who did no more than recite information given to her by a case manager of another agency.
Apart from the fatal deficiency created by the reliance on inadmissible hearsay evidence, we are satisfied that at neither hearing did the evidence which was presented support the critically required finding of a substantial likelihood of dangerous behavior. Not only were Dr. Ting's opinions devoid of any empirical basis, see Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981); Biunno, supra, comment 2 on N.J.R.E. 703 at 716, but the opinions themselves fell far short of the assuredness required by the burden of establishing by clear and convincing evidence that a substantial likelihood of dangerous behavior existed. See Matter of Commitment of D.M., 285 N.J. Super. 481, 487, 667 A.2d 385 (App.Div. 1995), certif. den., 144 N.J. 377, 676 A.2d 1092 (1996); R. 4:74-7(f). With respect to J.H., Dr. Ting's opinion was no more than a prognostication of possibility.
If he reverts back to the recent way he was committed here, he could be a danger to himself and others.[1]
With respect to J.B., the trial judge himself was unable to make more than a speculative finding of dangerousness. In reply to counsel's request for a determination as to dangerousness, the trial judge said:
Possibly to himself due to the wandering back and forth, living place to place; possibly others based on the racial slurs and being hostile to other residents it was testified to.[2]
*80 Nor was there the required examination into the question of an alternative disposition. R. 4:74-7(f); N.J.S.A. 30:4-27.15(a); N.J.S.A. 30:4-27.9(d).

III.
We have been advised at oral argument that both J.B. and J.H. have been released from confinement. This does not moot the controversy because each would be liable for the cost of his hospital care if the confinement were not illegal. See Matter of Commitment of D.M., supra, at 485 n. 1, 667 A.2d 385.
In sum we are satisfied that the proceedings conducted in these two matters deprived J.B. and J.H. of the procedural due process to which they were entitled by statutes and court rules and that there was insufficient medical evidence produced to support a conclusion by clear and convincing evidence that either was a danger to himself or others.
The judgments of commitment are reversed.
NOTES
[1] We have already noted that Dr. Ting's view of J.B.'s past history was based on unverified unacceptable hearsay.
[2] The testimony referred to was unverified unacceptable hearsay.