886 A.2d 208 (2005)
381 N.J. Super. 389
In the Matter of the COMMITMENT OF P.D.
In the Matter of the Commitment of J.M.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 2005.
Decided November 30, 2005.
*209 Stanley Shur, Assistant Deputy Public Defender, argued for appellants P.D. and J.M. (Yvonne Smith Segars, Public Defender, attorney; Mr. Shur, on the briefs).
Laura J. Paffenroth, Office of Camden County Adjuster, argued the cause for respondent State of New Jersey (Ms. Paffenroth, on the brief).
Before Judges STERN, GRALL and SAPP-PETERSON.
The opinion of the court was delivered by
STERN, P.J.A.D.
In separate appeals, consolidated for purposes of this opinion, P.D. and J.M. appeal from a "civil commitment order" involuntarily committing each to the Camden County Health Services Center (Lakeland Hospital) for thirty days. In both cases the appellant argues that the State failed to prove and/or the judge improperly found that he "suffered from a mental illness" and was "dangerous to others," warranting an involuntary civil commitment, and that the appeal is not moot by virtue of the appellant's discharge or non-extension of the commitment. In their briefs appellants argue that the appeals are not moot because of the hospital lien imposed as a result of the commitment and because the appeals involve issues "which are capable of repetition yet evading review" and involve "important issues of public policy and constitutional dimension."
Because the appellants were both discharged at or before the thirty-day period, and no subsequent review proceedings had to be conducted, we conclude that the appeals, principally dealing with issues of sufficiency of evidence and the committing judge's findings, should be dismissed as moot. See In re Geraghty, 68 N.J. 209, 212-13, 343 A.2d 737 (1975) (dismissing appeal as moot because the "broad issues concerning the procedural aspects of involuntary civil commitment which justified" consideration of moot cases were resolved by amendment of R. 4:74-7).
We recognize that we have frequently declined to dismiss challenges to involuntary civil commitments as moot despite the discharge. In In re Commitment of B.L., 346 N.J.Super. 285, 292, 787 A.2d 928 (App.Div.2002), we declined to dismiss a challenge to an involuntary hospitalization *210 notwithstanding that the appellants were "no longer involuntarily committed." We so held because of the liberty interests involved, because the appellants remained "liable for the cost of their confinement" and because "a finding in the patient's favor will entitle the patient to a credit for any period of illegal confinement." Ibid. See also In re Commitment of N.N., 146 N.J. 112, 124, 679 A.2d 1174 (1996) (case challenging the construction of the statute and dealing with the standard governing involuntary commitments of minors not dismissed because of the significant issue of public policy which might likely recur without opportunity for adjudication); In re Commitment of D.M., 285 N.J.Super. 481, 486 n. 1, 667 A.2d 385 (App.Div.1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996) (noting the need to review the allegedly wrongful confinement because of its impact under N.J.S.A. 30:4-27.5(b) with respect to a future commitment, as well as the financial liability which attached to the bills); In re Commitment of G.G., 272 N.J.Super. 597, 600, 640 A.2d 1156 (App. Div.1994) (court considered whether hospital treatment team's failure to arrange follow-up care could be basis for continued commitment under R. 4:74-7(h)(2)); In re Robert S., 263 N.J.Super. 307, 309, 622 A.2d 1311 (App.Div.1992) (declining to dismiss in light of N.J.S.A. 30:4-27.5 with respect to impact of three commitments to a short-term care facility).
The parties agree that, following the commitments and discharges involved in this case (and after the briefs were filed), the statute which imposes the lien for the commitment, N.J.S.A. 30:4-80.1, was repealed as applied to liens filed against persons treated at a psychiatric facility. See N.J.S.A. 30:4-80.6a.[1] The County Adjuster, in response to our questions at oral argument, has advised us that independent of the lien, the County will not seek to collect the cost of hospitalization, irrespective of any changes to the committees' financial condition, and to that extent we incorporate herein the representations made by counsel which we accept and rely upon in dismissing the case as moot. According to counsel:
For each former patient, the Camden County Adjuster's office performed its required financial investigation and prepared an Order of Settlement that stated the patient was responsible for $0.00 for his or her care and maintenance and a Judge of the Superior Court signed each Order.
I spoke with Ms. Elaine Villanova, Chief Financial Officer of the Camden County Health Services Center immediately after oral argument concluded. Ms. Villanova told me that when she receives the signed Order of Settlement, if the patient does not have a financial obligation a bill for services is not generated. Prior to the change in the psychiatric lien law, a bill was generated and sent to each patient, even if the patient was indigent. This billing procedure is no longer done and bills are sent only to patients with a financial responsibility as determined by the Camden County Adjuster's investigation.
Ms. Villanova told me the Camden County Health Services Center does not have open receivables accounts. She stated that for indigent patients, the charges are written-off upon receipt of the Order of Settlement. If an indigent patient remains in the hospital for a lengthy period of time, additional charges that are incurred are written-off *211 at the end of each month until discharge. Ms. Villanova said that once charges are written-off the County of Camden and State of New Jersey reimburse the hospital for the cost of care for the patients that cannot pay. The County's portion is 10% and the State's portion is the remaining 90%.
I asked Ms. Villanova what the hospital would do if a former patient who had been determined indigent received some type of financial windfall such as a legal settlement or inheritance. Her first question was, "How would we know if a former patient came into money?" She told me that the hospital does not do any follow-up on a former patient's financial status. Ms. Villanova then said if for some reason the hospital found out about this situation, the hospital would inform the State of New Jersey, who could then decide if it wanted to seek reimbursement.
In concluding that this case is moot we also note that it was undisputed at oral argument before us that it has been more than a year since both appellants have been discharged without recommitments, and that N.J.S.A. 30:4-27.5(b) and the commitments under review cannot be used as a basis for a future long-term commitment. See In re D.M., supra, 285 N.J.Super. at 486 n. 1, 667 A.2d 385; In re Robert S., supra, 263 N.J.Super. at 309, 622 A.2d 1311.[2]See also In re Commitment of A.A., 252 N.J.Super. 170, 176-77, 599 A.2d 573 (App.Div.1991). We further emphasize that, except for the lien now repealed, appellants point to no legal disability or disadvantage that flows from the commitment.
In deciding that this case implicates no new issue of law, and concerns sufficiency of the evidence and application of the proofs and findings to established law, we nevertheless emphasize that a temporary ex parte commitment can only be for twenty days, see also R. 4:74-7(c)(1), and that the initial commitment hearing thereafter  such as those involved in these appeals  must be "supported by the oral testimony of a psychiatrist on the patient's treatment team who has conducted a personal examination of the patient as close to the court hearing date as possible, but in no event more than five calendar days prior to the court hearing." R. 4:74-7(e). At the hearing, "[t]he patient, through counsel, [has] the right to present evidence and to cross-examine witnesses." R. 4:74-7(e). Moreover, there can be no continued involuntary commitment unless the court is satisfied "by clear and convincing evidence presented at the hearing ..." that (1) "the patient is mentally ill," (2) that "mental illness causes the patient to be dangerous to self or dangerous to others or property," (3) that he or she "is unwilling to be admitted to a facility for voluntary care," and (4) that the commitment is necessary because other alternatives "are not appropriate or available to meet the patient's mental health care needs." R. 4:74-7(f)(1). See also N.J.S.A. 30:4-27.2(m); D.M., supra, 285 N.J.Super. at 489-90, 667 A.2d 385. See also Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L. Ed.2d 323 (1979).
*212 We also emphasize that N.J.S.A. 30:4-27.2(r) defines "mental illness" and that that definition must be satisfied in order to permit the commitment. The statute also defines the requisite "danger" that must be found. See N.J.S.A. 30:4-27.2(h),(i). If committed, the order of commitment must provide for periodic reviews as detailed by R. 4:74-7(f)(2). Finally, while these appeals and others may become moot by virtue of the discharge of the patient, we recognize the liberty interests at stake. A final order of commitment under R. 4:74-7(f) constitutes a final judgment, and this court is empowered to consider an application for emergent relief upon the filing of an appeal and a motion for such relief, together with the supporting papers and an expedited copy of the transcript, where there is a genuine dispute concerning the commitment.
These appeals being moot are dismissed.
NOTES
[1] N.J.S.A. 30:4-80.6a took effect on March 24, 2005. See L. 2005, c. 55, § 11. The parties agree it applies to the liens in this case. See N.J.S.A. 30:4-27.2m. See also N.J.S.A. 30:4-27.2n, o, q.
[2] N.J.S.A. 30:4-27.5(b) provides that "[i]f a person has been admitted three times or has been an inpatient for 60 days at a short-term care facility during the preceding 12 months, consideration shall be given to not placing the person in a short-term facility." The cases do not examine in detail whether the twelve month time limit embodied in N.J.S.A. 30:4-27.5(b) applies to the three commitments as well as the commitment for sixty days or more. Both parties appear to agree that the twelve-month period applies to both, a reasonable position in light of the statute's punctuation. In light of the arguments before us, we need not examine that issue in this case.