# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2737-19

IN THE MATTER OF THE
CIVIL COMMITMENT OF
M.F.

_____

Submitted March 17, 2021 – Decided June 8, 2021

Before Judges Alvarez, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. SOCC-000001-06.

Joseph E. Krakora, Public Defender, attorney for appellant M.F. (Thomas G. Hand, Assistant Deputy Public Defender, on the briefs).

Serra Law Group, attorneys for respondent W.F. (Anthony J. Serra, on the brief).

PER CURIAM

M.F.'s assigned counsel appeals from a January 8, 2020 order re-committing M.F., a fifty-nine-year-old male with schizophrenia, to Greystone Park Psychiatric Hospital (Greystone). We affirm.

We discern the following facts from the record. Since January 25, 2012, M.F. has remained committed at Greystone due to a diagnosis of schizophrenia, disorganized type. The parties do not dispute M.F.'s diagnosis.[1] M.F. has suffered from schizophrenia, and remained institutionalized, for most of his adult life.

After a commitment review hearing on June 12, 2019, the trial judge determined that M.F. was no longer dangerous to himself or others and ordered his continued institutionalization under conditional extension pending placement (CEPP) status. See In re M.C., 385 N.J. Super. 151, 162 (App. Div. 2006); R. 4:74-7(h)(2). On December 26, 2019, unprovoked, M.F. punched his roommate in the face, causing injury to both men. As a result, M.F. was temporarily re-committed.

On January 8, 2020, almost two weeks after the incident, a commitment review hearing was conducted. Dr. Svetlana Volskaya, the treating psychiatrist at Greystone, opined that M.F.'s prognosis was "poor," and he was a "danger to others since [he] had an incident of punching [a] peer in the face." She testified that the peer was bleeding and had an abrasion on his nose, and that M.F.'s hand

---

[1] Due to the severity of his mental illness, M.F. does not have the ability to communicate his wishes or desires.

had "significant swelling" as a result of the incident. Dr. Volskaya was concerned, based on her past observations, about M.F.'s "aggressive behavior." She indicated that, due to M.F.'s elevated creatinine levels,[2] she was forced to reduce his lithium dosage. Dr. Volskaya opined that the December 26, 2019 incident was causally "related to the change" in the lithium dosage.

Dr. Volskaya testified that when M.F. initially arrived at Greystone, he decompensated due to neuroleptic malignant syndrome.[3] Greystone staff changed his medication, and he became "aggressive" and "unmanageable." Dr. Volskaya concluded that M.F. remained a danger to himself and others and, if discharged, would reasonably injure himself or others in the foreseeable future.

Following the hearing, the trial judge found that, although it had not occurred since 2012, the neuroleptic malignant syndrome was "a matter of concern in terms of management of" M.F because he continued "to be treated with neuroleptics." The judge determined that the December 26, 2019 incident

---

[2] Dr. Volskaya testified that psychiatrists must monitor creatinine levels when an individual is on lithium to prevent kidney failure.

[3] According to the National Institute of Neurological Disorders and Stroke, neuroleptic malignant syndrome "is a life-threatening, neurological disorder most often caused by an adverse reaction to neuroleptic or antipsychotic drugs." Neuroleptic Malignant Syndrome Info. Page, Nat'l Inst. of Health, https://www.ninds.nih.gov/Disorders/All-Disorders/Neuroleptic-Malignant-Syndrome-Information-Page.

A-2737-19

was "significant," and that "a person was injured." The judge also found that M.F. could not "be placed in a less restrictive setting presently because he would not receive the type of medical scrutiny" necessary to control his condition.[4] The trial judge concluded that the State proved "by clear and convincing evidence that [M.F.] remains a danger to himself with regard to his medical condition and remains a danger to others because of the short period of time since the last incident."

On appeal, M.F.'s assigned counsel raises the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED THE COMMITMENT OF M.F. BECAUSE THE STATE FAILED TO PROVE THAT AN ISOLATED [PHYSICAL] INCIDENT SATISFIED THE STATUTORY REQUIREMENTS FOR INVOLUNTARY CIVIL COMMITMENT SET FORTH IN N.J.S.A. 30:4-27.2.

POINT II

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED THE COMMITMENT OF M.F. BECAUSE THE STATE FAILED TO PROVE THAT M.F.'S MENTAL ILLNESS CAUSED HIM TO

---

[4] In that regard, the judge indicated that a nursing home was not able "to provide that kind of daily scrutiny of" M.F.'s creatinine levels which posed "a risk to him and that in itself is a danger."

A-2737-19

BE A DANGER TO HIMSELF AS REQUIRED BY
N.J.S.A. 30:4-27.2.

POINT III

[THAT] M.F. WAS PREJUDICED BY THE
GUARDIAN'S PARTICIPATION BECAUSE IT LED
THE TRIAL COURT ASTRAY FROM THE PROPER
LEGAL STANDARD RATHER THAN THE BEST
INTEREST STANDARD ADVANCED BY THE
GUARDIAN AND TAINTED THE TRIAL
[COURT'S] CONSIDERATION OF THE EVIDENCE
IN CONNECTION WITH THE APPLICABLE
STATUTES THAT DEFINE THE STATE'S BURDEN
OF PROOF, N.J.S.A. 30:4-27.2.[5]

POINT IV

THE TRIAL COURT'S ORDERS REGARDING
FUTURE REVIEW HEARINGS ARE THE SUBJECT
OF AN APPEAL PENDING IN A-3572-19 AND A
SUBSEQUENT STAY OF THOSE ORDERS, AND
ARE THUS MOOT IN REGARD TO THIS APPEAL.

"The scope of appellate review of a commitment determination is extremely narrow." In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The [trial] judge's determination should be accorded 'utmost deference' and modified only where the record reveals a clear abuse of discretion." In re J.P., 339 N.J. Super. 443, 459 (App.

---

[5] The issue of M.F.'s best interests is more thoroughly addressed in M.F.'s separate appeal pending under Docket No. A-3572-19.

Div. 2001) (quoting State v. Fields, 77 N.J. 282, 311 (1978)). We owe a trial judge's decision the utmost deference because "they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" R.F., 217 N.J. at 174 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

A court can enter an order of involuntary commitment if the State proves by clear and convincing evidence that "mental illness causes the patient to be dangerous to self or dangerous to others or property." R. 4:74-7(f)(1); see also N.J.S.A. 30:4-27.2(m). One is "[d]angerous to others or property" when:

> by reason of mental illness there is a substantial likelihood that the person will inflict serious bodily harm upon another person or cause serious property damage within the reasonably foreseeable future. This determination shall take into account a person's history, recent behavior, and any recent act, threat, or serious psychiatric deterioration.
> [N.J.S.A. 30:4-27.2(i).]

One is "[d]angerous to self" when:

> by reason of mental illness the person has threatened or attempted suicide or serious bodily harm, or has behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical harm, or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential

A-2737-19

medical care, or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available. This determination shall take into account a person's history, recent behavior, and any recent act, threat, or serious psychiatric deterioration.

[N.J.S.A. 30:4-27.2(h).]

The question of dangerousness calls "for a legal judgment guided by medical expert testimony." In re Commitment of M.M., 384 N.J. Super. 313, 337 (App. Div. 2006) (citing D.C., 146 N.J. at 59; In re Commitment of D.M., 313 N.J. Super. 449, 456 (App. Div. 1998)). The evidence must be "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re Robert S., 263 N.J. Super. 307, 312 (App. Div. 1992) (alteration in original) (quoting In re Jobes, 108 N.J. 394, 407 (1987)).

Having reviewed the record, and applying the deferential standard of review, we conclude the trial judge did not clearly abuse his discretion in ordering M.F.'s re-commitment. The undisputed testimony reveals that, just thirteen days prior to the commitment review hearing, M.F. assaulted his roommate at Greystone. As Dr. Volskaya indicated, this incident was likely the result of the decrease in lithium, necessitated by his rising creatinine levels. We are mindful that the "[d]etermination of dangerousness involves prediction of

7

. . . future conduct," but "past conduct is important evidence as to his probable future conduct." State v. Krol, 68 N.J. 236, 260-61 (1975); N.J.S.A. 30:4-27.2(i). We are satisfied that M.F.'s assaultive behavior, which stemmed from the difficulty in managing his medication regime, was sufficient to support the conclusion he presented a danger to others. N.J.S.A. 30:4-27.2(i).

Furthermore, the uncontroverted medical expert testimony revealed that M.F. required extensive medication, administered by hospital staff, to control his schizophrenia. The evidence supported a finding that, absent this significant, hospital-administered regimen, M.F. could again suffer from elevated creatine levels or redevelop neuroleptic malignant syndrome, which would present a danger to himself in the foreseeable future.[6] N.J.S.A. 30:4-27.2(h).

We therefore find no mistaken exercise of the trial judge's broad discretion in this regard. We note that periodic reviews consider the circumstances at the time of the review and that future reviews may lead the judge to a different conclusion. On the record presented to the judge, we affirm M.F.'s continued involuntary commitment.

---

[6] The statutory definition of "[d]angerous to self" is discussed in greater detail in the companion case.

A-2737-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION