272 N.J. Super. 597 (1994)
640 A.2d 1156
IN THE MATTER OF THE COMMITMENT OF G.G., APPELLANT.
IN THE MATTER OF THE COMMITMENT OF T.H., APPELLANT.
IN THE MATTER OF THE COMMITMENT OF J.F., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1994.
Decided April 28, 1994.
*599 Before Judges BRODY, STERN and KEEFE.
Lorraine M. Gormley, Deputy Public Advocate, Division of Mental Health Advocacy, argued the cause for appellants (Susan L. Reisner, Acting Public Advocate, attorney; Ms. Gormley, of counsel and on the briefs).
Daisy B. Barreto, Deputy Attorney General, argued the cause for respondent-intervenor Attorney General of New Jersey (Deborah *600 T. Poritz, Attorney General, attorney; Ms. Barreto, on the briefs).
The opinion of the court was delivered by BRODY, P.J.A.D.
This consolidated appeal requires us to review orders conditionally extending the involuntary civil commitment at Trenton Psychiatric Hospital of the three appellants, "otherwise entitled to discharge," due to the alleged "unavailability of an appropriate placement." R. 4:74-7(h)(2). At the time the orders were entered, each appellant had permanent living arrangements outside the hospital, either in rented quarters or with family, but the hospital treatment team had not yet completed a discharge plan with a community mental health agency for follow-up care as required by N.J.S.A. 30:4-27.18. We hold that the hospital treatment team's failure to arrange for follow-up care before a commitment hearing does not present the "unavailability of an appropriate placement" contemplated under R. 4:74-7(h)(2).[1]
Appellants were involuntarily committed without a hearing pursuant to provisions of the civil commitment act. N.J.S.A. 30:4-27.1 to -27.23. In its declaration of purpose, the act recognizes the constitutional importance of terminating such a commitment as soon as a committee no longer poses a threat of danger:
Because involuntary commitment entails certain deprivations of liberty, it is necessary that State law balance the basic value of liberty with the need for safety and treatment, a balance that is difficult to effect because of the limited ability to predict behavior; and, therefore, it is necessary that State law provide clear standards and procedural safeguards that ensure that only those persons who are dangerous to themselves, to others or to property, are involuntarily committed.
[N.J.S.A. 30:4-27.1b.]
*601 Based on the contents of screening and clinical certificates, the court initially found in each case that there was "probable cause to believe that the person is in need of involuntary commitment" and issued a temporary order authorizing admission to the hospital "pending a final hearing," pursuant to N.J.S.A. 30:4-27.10. The "final hearing," at which the court must determine whether there is a "continuing need for involuntary commitment," must be scheduled within 20 days from initial inpatient admission unless the committee has been administratively discharged earlier. N.J.S.A. 30:4-27.12. The orders under review were entered at final hearings.
An involuntary committee need not wait for the final hearing to be discharged. The hospital may administratively discharge the patient if its "treatment team determines that the patient no longer needs involuntary commitment." N.J.S.A. 30:4-27.17.
Under N.J.S.A. 30:4-27.11, the so-called patients' bill of rights, a committee is entitled to certain rights during confinement. Among them is the right "[t]o have a discharge plan prepared for him and to participate in the preparation of that plan." N.J.S.A. 30:4-27.11eb(9). Where the patient is an involuntary committee, a community mental health agency "shall participate in the formulation of the plan" and "shall provide follow-up care[.]" N.J.S.A. 30:4-27.18.
N.J.S.A. 30:4-27.15 limits the court to one of three dispositions at the final hearing:
a. If the court finds by clear and convincing evidence that the patient needs continued involuntary commitment, it shall issue an order authorizing the involuntary commitment of the patient and shall schedule a subsequent court hearing in the event the patient is not administratively discharged pursuant to section 17 of this act prior thereto.
b. If the court finds that the patient does not need continued involuntary commitment, the court shall so order and the facility shall discharge the patient within 48 hours of the court's verbal order or by the end of the next working day, whichever is longer, with a discharge plan prepared pursuant to section 18 of this act.
c. If the court finds that the patient's history indicates a high risk of rehospitalization because of the patient's failure to comply with discharge plans, the court *602 may discharge the patient subject to conditions recommended by the facility and mental health agency staff and developed with the participation of the patient. Conditions imposed on the patient shall be specific and their duration shall not exceed 90 days.
The designated mental health agency staff person shall notify the court if the patient fails to meet the conditions of the discharge plan. The court shall determine, in conjunction with the findings of a screening service, if the patient needs to be rehospitalized and, if so, the patient shall be returned to the facility. The court shall hold a hearing within 20 days of the day the patient was returned to the facility to determine if the order of conditional discharge should be vacated.
There was no evidence at these final hearings that appellants then met the "dangerousness" criteria for continued involuntary commitment. Nevertheless, the court did not order their discharge because it found that the follow-up care portion of their discharge plans had not been completed. The evidence in each case respecting the progress in arranging follow-up care was hearsay, uncertain and sometimes conflicting. The hospital made no real effort to present specific evidence on the point. The court nevertheless withheld discharge orders, with or without conditions, because of its concern, not reduced to findings of fact, that though appellants had a place to live they could not get along outside the hospital until arrangements were in place for follow-up care.
In each case the hospital had more than the 20-day maximum statutory period before final hearing to develop the discharge plan. G.G. had been confined 27 days, T.H. had been confined 24 days, and J.F. had been confined 40 days. Although initially there was evidence that each appellant probably needed involuntary commitment, there has never been a finding by clear and convincing evidence that they pose a danger to self, others or property. Thus, in keeping with the patients' bill of rights, the hospital should have used the weeks of confinement to prepare discharge plans, including follow-up care, before the final hearings.
The hospital presented no evidence, competent or otherwise, as to what, if anything, specifically had been done to develop appellants' plans and no evidence as to what, if anything, remained to be done or how long it would take to do it. The Legislature, *603 anticipating that a discharge plan might not be completed when a patient no longer needs to be confined, limited the court's authority to extend confinement for that reason. In the case of an administrative determination that the patient be discharged, N.J.S.A. 30:4-27.17 provides, "If a discharge plan has not been developed pursuant to section 18 of this act, it shall be developed forthwith." In the case of an order of discharge following a final hearing, N.J.S.A. 30:4-27.15b provides that "the facility shall discharge the patient within 48 hours of the court's verbal order or by the end of the next working day, whichever is longer, with a discharge plan prepared pursuant to section 18 of this act."
In each case here, the court entered an order on a printed form providing, "Conditional extension pending placement is approved/continued [Rule 4:74-7(h)(2)]. Placement Review hearing to be scheduled ____" In the case of G.G. the court filled in the blank with "two weeks"; it filled in the blank in the T.H. order with "rev. 2 weeks"; and filled in the blank in the J.F. order with "rev. 1 week."
Ordering a conditional extension of commitment pending placement (CEPP) pursuant to R. 4:74-7(h)(2) was not a proper disposition given the evidence in these cases. The Rule provides in relevant part:
If a patient otherwise entitled to discharge, cannot be immediately discharged due to the unavailability of an appropriate placement, the court shall enter an order conditionally extending the patient's hospitalization and scheduling a placement review hearing within 60 days thereafter. If the patient is not sooner discharged, a second placement review hearing shall be held no later than six months after the initial placement review hearing and subsequently at no greater than six-month intervals. At all placement review hearings the court shall inquire into and receive evidence of the patient's placement as is necessary to support the entry of an order conditionally extending the patient's hospitalization. If the court is advised at a hearing that an appropriate placement is available, it shall forthwith order such placement. If an appropriate placement becomes available during the interval between scheduled hearings, the patient may be administratively discharged to said placement.
[Emphasis added.]
The Rule establishes procedures for dealing with a narrow problem identified in In re S.L., 94 N.J. 128, 462 A.2d 1252 (1983). Many committees had to be released from mental hospitals in *604 response to judicial and legislative action taken to correct the violation of their constitutional right to liberty by continuing their confinement after they no longer posed a danger to themselves, others or property. By then, however, some committees had spent so much of their lives in mental hospitals that they were not able to cope with the liberty the constitution guaranteed them. The Court explained the dilemma and resolved it as follows:
Although the State may not commit those persons who are mentally ill but not dangerous, we believe that the State does possess certain authority in regard to these appellants. The appellants have been institutionalized for an average of over 30 years. Although legally entitled to leave the mental hospital, they are incapable of completely exercising that right due, in part, to the effects that prolonged confinement has had on their own personal capacity to survive in the outside world and on their relationships with friends and family who might provide support and assistance. The State cannot simply pull the rug from under these people when they physically deteriorate to a point where they are no longer dangerous. Although the State does not have the authority to continue the legal commitment of the appellants, it is not required to cast them adrift into the community when the individuals are incapable of survival on their own. In a proper exercise of its parens patriae authority, it may therefore of necessity continue the confinement of such persons on a provisional or conditional basis to protect their essential well-being, pending efforts to foster the placement of these individuals in proper supportive settings outside the institution.
[Id. at 139-40, 462 A.2d 1252.]
An "appropriate placement" referred to in the Rule and in S.L. is a placement in a facility that will provide continuing support and assistance through the day to mentally ill people who are "incapable of survival on their own." The Court described such a place as a "facility" that would provide "the needed level of care in the least restrictive manner[.]" Id. at 140-41, 462 A.2d 1252.
An "appropriate placement" does not refer to a community mental health agency that provides periodic follow-up care, such as a step program or the administration of medicine, no matter how important that care may be to the committee's well-being. After all, many people lead otherwise normal lives who must go periodically to a facility for vital medical attention such as hemodialysis. One would not think of confining such people involuntarily to be sure that they receive the periodic treatment that they need. If a committee has demonstrated neglect or refusal respecting *605 periodic follow-up care, the discharge may be made conditional pursuant to N.J.S.A. 30:4-27.15c.
Here, the court improperly extended appellants' involuntary confinement by simply acceding to the hospital's conclusory recommendation for CEPP even though there was no evidence of "the unavailability of an appropriate placement." For example, at the T.H. hearing, the entire direct testimony of the only witness was the following:
Q Doctor, when did you last examine the patient, [T.H.]?
A Today.
Q And do you have a recommendation for her?
A Yes. CEPP and to reevaluate in two weeks.
The doctor had no idea of what efforts, if any, were being made to arrange for follow-up care. Indeed, when pressed on further questioning she acknowledged that T.H. should be discharged. She testified, "I don't know exactly what I'm waiting for."
In short, CEPP is not intended as a means for extending an involuntary commitment simply because the hospital has not yet arranged for the periodic follow-up care of a patient not found to be a danger to self, others or property. Using that erroneous approach here devalued appellants' constitutional right to liberty.
Our opinion and later events have rendered moot the other issues raised in these appeals.
The three orders are reversed and the matter is remanded for the entry of orders of discharge.
NOTES
[1] Each appellant was discharged soon after the orders were entered, thereby rendering the issue moot. We agree with the parties that we should nevertheless decide the issue because it implicates a committee's constitutional right to liberty, and by its nature will continually become moot before judicial review. See Cain v. New Jersey State Parole Board, 78 N.J. 253, 255, 394 A.2d 327 (1978).