RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0435-16T4

IN THE MATTER OF THE
CIVIL COMMITMENT OF M.C.
_______________________________

 Submitted November 8, 2017 – Decided December 4, 2017

 Before Judges Reisner and Gilson.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Docket No. ESCC-
 1134-2016.

 Joseph E. Krakora, Public Defender, attorney
 for appellant M.C. (Richard I. Friedman,
 Assistant Deputy Public Defender, on the
 briefs).

 Courtney M. Gaccione, Essex County Counsel,
 attorney for State of New Jersey/County of
 Essex (Thomas M. Bachman, Assistant County
 Counsel, of counsel and on the brief).

PER CURIAM

 M.C., who was previously involuntarily committed to a

psychiatric hospital, appeals from an August 23, 2016 order placing

him on conditional extension pending placement (CEPP). See R.

4:74-7(h)(2). He contends that, because there was no evidence

that he was dangerous to himself or others at the time of the
hearing, and his sister was willing to provide him a place to live

and make sure that he obtained any necessary outpatient treatment,

the court should have ordered his release.

 Based on our review of the record, we conclude that the trial

court's decision was unsupported by the record and was inconsistent

with well-established case law concerning the permissible use of

CEPP as a disposition in a civil commitment case. Because there

was no expert testimony that M.C. was currently dangerous to

himself or others, and he had an immediately available place to

live in the community, the court should have ordered his release

subject to conditions, rather than continuing his involuntary

commitment. Accordingly, we reverse the order on appeal.

 Contrary to the State's argument, although M.C. has since

been released, the appeal is not moot, because absent the relief

we provide here, M.C. will remain liable for the cost of his

hospitalization. See N.J.S.A. 30:4-80.1; In re Commitment of

B.L., 346 N.J. Super. 285, 292 (App. Div. 2002). Consistent with

this opinion, we hold that M.C. is not financially responsible for

his hospitalization costs between August 23, 2016 and the date of

his release, and the State must promptly discharge any lien

corresponding to that debt.

 As our Supreme Court cautioned decades ago, CEPP is only

appropriate where a psychiatric patient cannot safely survive in

 2 A-0435-16T4
the community without an appropriate placement and such a placement

is not yet available. In re S.L., 94 N.J. 128, 137-38 (1983).

CEPP is not a constitutionally permissible option where a patient

is "capable of surviving safely in freedom by himself or with the

help of willing and responsible family members or friends." Ibid.;

see also In re G.G., 272 N.J. Super. 597, 603 (App. Div. 1994).

 Once a patient has such a community placement available, he

or she must be released within forty-eight hours after the hearing.

N.J.S.A. 30:4-27.15(b). We have repeatedly emphasized that CEPP

is not appropriate as a means of giving the hospital's staff extra

time to make arrangements for outpatient treatment.

 We have stressed that "CEPP is not intended
 as a means for extending an involuntary
 commitment simply because the hospital has not
 yet arranged for the periodic follow-up care
 of a patient not found to be a danger to self,
 others or property." And, we have cautioned
 that use of "that erroneous approach . . .
 devalue[s] [the patient's] constitutional
 right to liberty." . . . Thus, CEPP is not a
 fallback option when the [S]tate cannot
 implement a discharge plan within forty-eight
 hours, and CEPP is not a means through which
 the judge may delay a conditional release.

 [In re T.J., 401 N.J. Super. 111, 124 (App.
 Div. 2008) (quoting In re M.C., 385 N.J.
 Super. 151, 162 (App. Div. 2006)); see also
 B.L., supra, 346 N.J. Super. at 348.]

 Against that legal backdrop, we briefly summarize the limited

record placed before us. M.C. suffers from chronic paranoid

 3 A-0435-16T4
schizophrenia, with alcohol abuse. He was hospitalized on June

17, 2016, because he was hearing voices telling him to hurt

himself, and an initial order of involuntary commitment was entered

on June 20, 2016. By the time of the review hearing on August 23,

2016, his psychiatric condition had improved to the point where

he no longer posed a danger and he was no longer legally

committable. However, his treating psychiatrist testified that

she wanted M.C. to remain in the hospital for several more weeks

so that she could monitor his response to his dosage of clozapine.

She admitted that medical monitoring, including weekly blood

testing and administration of the medication, could be performed

in the community, but she asked the judge to place M.C. on CEPP

status: "The only reason being that I want him to wait until we

make proper arrangements for blood work and clozapine medication

follow up."

 M.C.'s sister appeared at the hearing and testified that she

was immediately willing to take him home with her, let him live

with her, and "take him to the doctor and get blood work every

week." However, the doctor asserted that it would take a month

to six weeks to identify an outpatient mental health facility in

the sister's neighborhood and to determine whether M.C. had

unspecified "benefits" to obtain outpatient treatment.

 4 A-0435-16T4
 There was no testimony that any member of the hospital staff

had made any efforts, prior to the hearing, to identify a community

mental health facility in the sister's neighborhood. Nor was

there any explanation as to what "benefits" M.C. would need in

order to obtain blood tests or medication monitoring at such a

facility, or why it would take a month to six weeks to determine

the location of a facility and find out whether the facility would

provide him with care.

 On this record, we cannot find that the State met its burden

of proving, by clear and convincing evidence, that there was a

continued need to deprive M.C. of his liberty. See N.J.S.A. 30:4-

27.15(a) (The State's burden of proof is by clear and convincing

evidence.). M.C. had a supportive family member ready to take him

into her home and supervise his outpatient care. If the court was

persuaded that M.C. needed follow-up outpatient care to avoid "a

high risk of rehospitalization," the appropriate procedure was to

order his release on condition that he obtain that care in the

community. See N.J.S.A. 30:4-27.15(c) (authorizing conditional

release). "[T]he trial court's fear of [the patient's] potential

relapse without specific aftercare placements designed by the

[hospital staff], however well-intentioned, is legally

insufficient to continue his hospitalization." T.J., supra, 401

N.J. Super. at 123.

 5 A-0435-16T4
 In conclusion, we cannot accord our usual deference to the

trial court's decision here, because the evidence did not legally

justify the order keeping M.C. involuntarily confined on CEPP

status.1 See In re D.C., 146 N.J. 31, 58-59 (1996) (Deference is

due to the trial court's decision unless it was "clearly

erroneous.").

 Reversed.

1
 To the extent not specifically addressed here, the State's
appellate arguments, including its contention that M.C. failed to
"waive" his alleged "right" to remain in the hospital on CEPP
status, are without sufficient merit to warrant discussion in a
written opinion. R. 2:11-3(e)(1)(E).

 6 A-0435-16T4