# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0292-19T2
A-0317-19T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF I.M.

_____

IN THE MATTER OF THE
CIVIL COMMITMENT OF A.F.

_____

Argued October 19, 2020 – Decided January 20, 2021

Before Judges Messano and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. MECC-736-19 and MECC-803-19.

Shannon M. Dolan, Assistant Deputy Public Defender, argued the cause for appellants I.M. and A.F. (Joseph E. Krakora, Public Defender, attorney; Shannon M. Dolan, on the briefs).

Suzette Price, Assistant County Counsel, argued the cause for respondent Mercer County (Paul R. Adezio, Mercer County Counsel, of counsel; Suzette Price, on the brief).

PER CURIAM

In these consolidated appeals, appellants I.M. and A.F. contend they were entitled to be discharged from Trenton Psychiatric Hospital (TPH) within forty-eight hours of their commitment review hearings pursuant to N.J.S.A. 30:4-27.15(b) and Rule 4:74-7(h). Instead, in both instances, appellants argue the judge erroneously continued their commitment as a Conditional Extension Pending Placement (CEPP). See R. 4:74-7(h)(2).

Dr. Biju Basil, the State's medical expert at I.M.'s hearing, diagnosed I.M. with schizophrenia. Dr. George Dubois, the State's medical expert at A.F.'s hearing, diagnosed A.F. with schizoaffective disorder, bipolar type, and substance abuse disorder. During the respective commitment review hearings, the State's medical expert testified that appellants no longer were a danger to themselves, others, or property, and each had arranged housing upon discharge.

Despite this, both doctors testified that they needed to ensure treatment services were in place before discharge. Dr. Basil wanted to make sure "the treatment plans [we]re really put in place . . . [so I.M.] is able to stay safe, [and] take her medications regularly[.]" Dr. Dubois testified that A.F. "did extremely well in complying with her medication" but there were "a few things to put in place."

A-0292-19T2

Appellants sought to be discharged. The judge ordered appellants detained under CEPP with a review hearing scheduled two weeks later. See R. 4:74-7(h)(2). TPH has since discharged appellants – I.M. fourteen days after her commitment review hearing (the date on which her subsequent review hearing had been scheduled), and A.F. six days after her commitment review hearing.

I.

Civil commitment implicates one's constitutional right to liberty. See In re N.N., 146 N.J. 112, 127 (1996) ("There is no doubt that the constitutional liberty interests that are implicated in the context of civil commitment proceedings are sensitive and substantial." (Parham v. J.R., 442 U.S. 584 (1979))). Nevertheless, "[o]ur scope of review of civil commitment judgments is exceedingly narrow." In re W.X.C., 407 N.J. Super. 619, 630 (App. Div. 2009) (citing In re J.M.B., 395 N.J. Super. 69, 89 (App. Div. 2007); In re V.A., 357 N.J. Super. 55, 63 (App. Div. 2003)). "While this court gives deference to civil commitment decisions and reverses only when there is clear error or mistake, a reviewing court must consider the adequacy of the evidence." In re M.M., 384 N.J. Super. 313, 334 (App. Div. 2006) (citing In re D.C., 146 N.J. 31, 58–59 (1996)).

A-0292-19T2

Although appellants' liberty rights were affected adversely by their continued commitment, these appeals are moot. "[A]n issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy[.]" In re J.S., 444 N.J. Super. 303, 313 (App. Div. 2016) (citing Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257–58 (App. Div. 2006)). Since appellants have been discharged, there is no existing controversy. Because appellants are not financially liable for their hospitalization, there is also no adequate remedy this court can grant them. See In re T.J., 401 N.J. Super. 111, 118 (App. Div. 2008) ("[W]hen the patient remains liable for his or her hospital bill . . . a finding in the patient's favor will entitle the patient to a credit for any period of illegal commitment." (quoting In re B.L., 346 N.J. Super. 285, 292 (App. Div. 2002))). Nonetheless, we are compelled to address the continued abuse of CEPP as a means to delay discharge when discharge is appropriate.

## II.

A court can enter an order of involuntary commitment if the State proves by clear and convincing evidence that "mental illness causes the patient to be dangerous to self or dangerous to others or property[.]" R. 4:74-7(f)(1)(2); see also N.J.S.A. 30:4-27.2(m). One is "[d]angerous to self" when:

A-0292-19T2

by reason of mental illness the person has threatened or attempted suicide or serious bodily harm, or has behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical harm, or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential medical care, or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available.

[N.J.S.A. 30:4-27.2(h).]

The question of dangerousness is a strictly legal determination that requires the "judge . . . make specific findings and correlate them to the legal standards" while guided by medical expert testimony. M.M., 384 N.J. Super. at 337–38 (citing D.C., 146 N.J. at 59; In re D.M., 313 N.J. Super. 449, 454, 456 (App. Div. 1998)). "The evidence must permit the judge 'to come to a clear conviction [that person is mentally ill and dangerous], without hesitancy.'" Id. at 334 (alteration in original) (quoting In re G.G.N., 372 N.J. Super. 42, 59 (App. Div. 2004)). The evidence must be "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re Robert S., 263 N.J. Super. 307, 312

A-0292-19T2

(App. Div. 1992) (alteration in original) (quoting In re Jobes, 108 N.J. 394, 407–08 (1987)).

On the other hand, when a person detained under civil commitment "is no longer dangerous to self" but cannot "survive in the community independently or with the help of family or friends[,]" a court can order the person detained under CEPP status. In re M.C., 385 N.J. Super. 151, 162 (App. Div. 2006); R. 4:74-7(h)(2).

Dr. Basil sought to delay discharge for two weeks because he wanted to ensure I.M. "[took] her medications regularly and [would] not have to come back this often to the hospital." Dr. Dubois testified that A.F. was "[doing] extremely well in complying with her medication," and he had "a few things to put in place." The court cannot order CEPP if there is a mere possibility that a person may stop taking medication. That is not evidence of a substantial likelihood of future harm. See In re J.R., 390 N.J. Super. 523, 532 (App. Div. 2007) (holding a doctor's testimony that there was a possibility a detained person may stop taking his medication "is insufficient to constitute clear and convincing evidence of a substantial likelihood of future harm necessary for involuntary confinement") (citing In re W.H., 324 N.J. Super, 519, 523 (App. Div. 1999)). Even if the court believed appellants were a danger to themselves because of

potential non-compliance with medications, a hospital cannot confine a patient on CEPP status based on these concerns. See M.C., 385 N.J. Super. at 165 (holding that ordering CEPP "to ensure compliance with a medication schedule to which the patient agrees is not a basis for continuing the commitment of a person who is not mentally ill and dangerous").

The State argues that at the time of their hearings, appellants were suffering from a mental illness rendering them dangerous to themselves, and CEPP was the least restrictive environment for them. The State asserts that the trial court took judicial notice of their dangerousness pursuant to N.J.R.E. 201(b)(3) by considering appellants' medical history.

We reject this argument for several reasons. It is unclear whether the judge even considered appellants' medical history. The State did not introduce any chart notes or other documents into evidence. Even if the judge had them available, there is no indication they contained any facts or opinions that the judge took notice of or relied upon. The judge made no legal findings that suggested appellants were a danger as defined by N.J.S.A. 30:4-27.2(h). Additionally, an order placing a patient on CEPP status means that the judge found the patient was not dangerous, and therefore, did not meet the criteria for involuntary commitment. See In re S.L., 94 N.J. 128, 131 (1983) (patients

placed on CEPP status, "although technically 'discharged,' remain in mental hospitals until appropriate outside placements become available").

Pursuant to N.J.S.A. 30:4-27.15(b) and Rule 4:74-7(h)(1), if the court finds that a patient no longer needs involuntary commitment, the facility shall discharge the patient no later than forty-eight hours of the court's verbal order or by the end of the next working day, whichever is longer. See also M.C., 385 N.J. Super. at 160 (noting if the State fails to establish the need for involuntary commitment or CEPP, "the general rule requires discharge upon completion of discharge plans within forty-eight hours") (citing N.J.S.A. 30:4-27.15(b)). Ordering CEPP when there is appropriate placement available is improper and a deprivation of appellants' liberty. In re G.G., 272 N.J. Super. 597, 605 (App. Div. 1994). "[A] hospital treatment team's failure to arrange for follow-up care before a commitment hearing does not present the 'unavailability of an appropriate placement' contemplated under Rule 4:74-7(h)(2)." Id. at 600. Dr. Basil and Dr. Dubois not only testified that appellants did not meet the criteria for continued hospitalization and had appropriate placement, but both failed to present a discharge plan or explain why appellants could not be discharged within the time needed for minimal discharge planning.

In a final attempt to support its position, the State argues that more than "minimal efforts" for developing an outpatient plan were needed because once discharged, appellants would "return to the places they were at when they decompensated" and again need hospitalization. There is no evidence in the record that appellants were going to be exposed to situations upon release that would make them dangerous.

Lastly, the judge's findings and conclusions in both hearings were woefully inadequate. Rule 1:7-4(a) requires a judge to make findings of fact and conclusions of law. In each of these cases, the judge did neither. We admonish judges to make adequate factual findings and legal conclusions on the record so that appellate review may properly serve the litigants. See, e.g., Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018) (noting "our function as an appellate court is to review the decision of the trial court," and the "requirements [of Rule 1:7-4(a)] are unambiguous").

The evidence adduced at appellants' hearings did not support the orders placing them on CEPP status. We take this opportunity to express our concern with the continued use of CEPP status to detain patients without proper proof or for improper reasons. Because appellants were discharged shortly after the judge entered the orders under review, the appeal is moot.

9

Both appeals are dismissed as moot.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION