# **RECORD IMPOUNDED**

## **NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0681-17T4

IN THE MATTER OF THE
CIVIL COMMITMENT OF K.O.

Argued November 28, 2018 - Decided January 10, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. OCC00212017.

Christina M. Salabert, Assistant Deputy Public Defender, argued the cause for appellant K.O. (Joseph E. Krakora, Public Defender, attorney; Christina M. Salabert, and Renée J. Bissonnette, Assistant Deputy Public Defender, on the briefs).

Steven B. Lieberman argued the cause for respondent Carrier Clinic, Inc.

PER CURIAM

K.O. appeals from an October 3, 2017 order, entered on reconsideration, placing her on CEPP (conditional extension pending placement) status pursuant to

R. 4:74-7. We agree with K.O. that the judge erred in placing her on CEPP status. But having studied the transcript of the two commitment hearings conducted only a few hours apart, it appears what transpired here resulted entirely from the judge simply misspeaking from the bench when he made his initial ruling that K.O. should be discharged, hours before he reconsidered and placed her on CEPP status. Moreover, despite the judge having placed K.O. on CEPP status, counsel confirmed for us at argument she was discharged the following day in accordance with N.J.S.A. 30:4-27.15(b). Accordingly, although not our customary approach to such matters,[1] we conclude the unusual circumstances giving rise to this order, which did not result in the illegal extension of K.O.'s involuntary commitment, are unlikely to be repeated, and thus the appropriate resolution is to dismiss the appeal as moot.

Three witnesses testified at the commitment hearing: the psychiatrist who had examined K.O. at Carrier Clinic in anticipation of the hearing and was standing in for her treating psychiatrist, the social worker from Carrier where K.O. was involuntarily committed, and K.O. The psychiatrist testified K.O. suffered from a

---

[1] Our courts generally consider appeals challenging civil commitment even after the appellant's release has mooted relief because of the importance of the individual's liberty interest and the likelihood of repetition of error that will escape review. See In re Commitment of N.N., 146 N.J. 112, 124 (1996); see also In re Commitment of P.D., 381 N.J. Super. 389, 391-92 (App Div. 2005), certif. granted and remanded, 186 N.J. 251 (2006).

mental illness, namely bipolar disorder with mania and psychosis, which K.O. did not dispute. The contested issue was whether she was then a danger to herself, others, or property as defined in N.J.S.A. 30:427.2(h) and (i).

K.O. had been admitted involuntarily to Carrier through psychiatric emergency services two weeks prior to the hearing. The psychiatrist and the social worker both testified K.O. resisted medication[2] throughout her stay and refused to engage in necessary conversations about discharge planning and after care. Carrier staff testified discharge planning was important, as K.O. was estranged from her family and was apparently homeless with nowhere to go. The report on admission had been that K.O. was living in her car.

The social worker testified the first conversation staff had been able to have with K.O. about discharge planning took place just prior to the hearing when she expressed a desire to go to a motel. Stressing K.O.'s homelessness, the psychiatrist opined that because of her mental illness, and without appropriate after care in place, K.O. was dangerous to herself or others. He recommended a two-week review period, saying, "[h]opefully she'll be able to get out wherever she can go."

K.O. testified she had been divorced from her husband the year before, and he had a restraining order preventing her from any contact with him or their

---

[2] The psychiatrist testified K.O. was subject to an involuntary medication order and, although resistant, took all medications prescribed.

children. She also explained in a somewhat disjointed fashion, which the judge ascribed to mania, that she was not welcome at her mother's or grandmother's homes, places she had previously resided at different times. Although her testimony about funds available to her or anticipated was not clear, K.O. claimed she had adequate resources in the short term to stay at a hotel.

Following that testimony, K.O.'s counsel argued the State had not proved dangerousness, and that homelessness could not justify K.O.'s continued commitment. See In re S.L., 94 N.J. 128, 139 (1983) (holding "the State may not commit those persons who are mentally ill but not dangerous"). Counsel contended the proofs established K.O. was capable of renting a hotel room and caring for herself, and thus that her continued commitment was not justified.

The court agreed, finding the State had clearly and convincingly established K.O. was mentally ill but not proved she was dangerous or incapable of caring for herself. The judge accordingly, and appropriately, ordered her release, stating, "I'm going to discharge her." Following an interruption by K.O. thanking the judge and assuring him he had not made a mistake, the judge added "[b]y the end of the day."

N.J.S.A. 30:4-27.15(b) provides that a court finding a "patient does not need continued involuntary commitment to treatment . . . shall so order" and the "patient shall be discharged by the facility within 48 hours of the court's verbal order or by the end of the next working day, whichever is longer, with a discharge plan

A-0681-17T4

prepared pursuant to [N.J.S.A. 30:4-27.18]." Nothing in the record suggests why the judge ordered what was, in essence, K.O.'s immediate discharge contrary to the provisions of N.J.S.A. 30:4-27.15(b). Neither county counsel nor the public defender questioned the judge about that aspect of his order.

Instead, roughly three hours later, counsel for Carrier appeared and orally requested reconsideration on behalf of the hospital.[3] The public defender objected, arguing Carrier was not a party and any motion for reconsideration would have to be made by the County.[4] Counsel for Carrier responded that the hospital had a legal and ethical obligation to safely discharge its patient, which the court's order prevented it from doing, and thus that it was obligated to seek relief from the court's order. The court permitted the reopening of the hearing and the same three witnesses offered additional testimony.

Both the psychiatrist and the social worker testified in greater detail about the hospital's inability to plan for K.O.'s discharge because of her refusal to sign consent forms, permitting the hospital to contact her psychologist and others, until just prior to the first hearing earlier in the day. The psychiatrist explained that K.O.

---

[3] Both hearings took place at Carrier.

[4] There is no explanation on the record why county counsel, presumably still on site, did not present this motion. Counsel for Carrier represented at oral argument before us that he approached county counsel and was told, "[y]ou do it."

A-0681-17T4

was "not fully stable." She was also resistant to taking mood stabilizing medication, leading the doctor to believe she would not take it on discharge without outpatient treatment in place. The psychiatrist claimed that without the medication, K.O. would remain in a manic phase that could worsen very quickly.

The social worker testified the hospital did not have outpatient treatment set up because the number K.O. provided for her psychologist was not in service, and the hospital did not know the name of the home health aide K.O. intended to hire or how to contact her. The hospital also did not know whether the hotel K.O. wanted to go to, which was two hours away in Ocean County, had an available room or how K.O. would get there. The social worker further could not say how K.O. "would pay for any of this." The social worker had not been able to verify K.O.'s claim "to have a credit card with alimony money on it," and explained that K.O.'s "belongings are in her car that may have been towed from the mini-mart where it was last found." The social worker explained the difficulty of trying to address all of those issues within a few hours and that "a little bit more time would allow us to do that."

K.O. testified it was "quite apparent to [her] that [Carrier] didn't make a plan for today." She explained that without Carrier staff "confirming where my car is, which they can do, because they've done before, I don't want to leave today. I'd prefer to leave tomorrow when they have a plan in place." K.O. went on to explain

6                                                    A-0681-17T4

she would need police to escort her to her grandmother's house because "that's my primary place of residence and that's where I left — left some of my bank account information" and access her car so she could get her "identification, you know, and — and bank information . . . . [b]ecause it was all left in my vehicle." K.O. advised the court she "certainly [did not] want to be, you know, leaving at 5 o'clock today, based on, you know, nobody confirming anything for me. You know I thought she — my social worker would be confirming that stuff." Carrier's counsel argued the hospital was seeking some time to develop a discharge plan with K.O.'s cooperation to allow her to be safely discharged, which the hospital did not believe could happen that afternoon. The public defender, while reiterating that K.O. was not a danger to herself or others and thus could not be involuntarily confined, noted that K.O. testified "she would be willing to stay in the hospital for another day to help solidify a discharge plan" and reminded the court that N.J.S.A. 30:4-27.15(b) permitted Carrier forty-eight hours "to solidify discharge arrangements."

After permitting counsel to make their arguments, the judge said:

> [t]here's no question that the patient no longer meets the requirements for commitment. The question is whether she can be discharged today. She — admits that she — she doesn't want to be discharged today, because no arrangements have been made for her to leave today. So I am going to place her on conditional extension pending placement.

The judge did not explain why he chose to put K.O. on CEPP instead of simply discharging her in accordance with the statute, which provides for discharge "by the facility within 48 hours of the court's verbal order or by the end of the next working day, whichever is longer." He simply advised K.O. that the more she cooperated "the sooner this is going to happen," and advised counsel "if she's till here, we'll review her status in one week, but my — my assumption is that it will be all done by then." This appeal followed.

The public defender argues the court erred in allowing K.O.'s matter to be reheard, that Carrier was not a party to K.O.'s commitment and thus its intervention was improper, that neither the State nor Carrier proved K.O.'s commitment or CEPP status was necessary and that the appeal is not moot. Carrier counters that it had an obligation to intervene in order to protect the interests of its patient K.O, that the court "determined that strict compliance with the Rules of court should be relaxed" to protect K.O.'s health and safety and that the matter is moot.

As should be clear to anyone having read this far, the error here was not ordering K.O.'s discharge in accordance with the clear dictates of N.J.S.A. 30:4-27.15(b). Had the court simply followed the statute in ordering K.O.'s discharge, it is likely that none of what followed would have ever occurred.

As we have stated on countless other occasions, the importance of the individual and public interests implicated by involuntary civil commitment compel

A-0681-17T4

the trial judge to assiduously attend to the demands of the statute and the need to make adequate findings. See, e.g., In re Commitment of S.D., 212 N.J. Super. 211, 218-19 (App. Div. 1986). "A judge presiding over a commitment hearing is vested with extraordinary responsibility; when the judge does not apply the legal standards and find the relevant facts, our subsequent correction of the abuse of discretion is a poor remedy for the ill." In re Commitment of M.M., 384 N.J. Super. 313, 332-33 (App. Div. 2006).

The judge here never explained why he initially ordered K.O.'s immediate discharge contrary to the forty-eight hours permitted by the statute in order to allow an appropriate discharge plan, nor why he ordered CEPP status on reconsideration instead of simply ordering K.O.'s discharge in accordance with N.J.S.A. 30:4-27.15(b). We are well aware of the number of hearings judges at institutions such as Carrier conduct in a day, sometimes resulting in their failure "to dot every 'i' or cross every 't.'" S.D., 212 N.J. Super. at 219. But as we have observed before, the number of hearings "is no reason for them or for us to forget that which is the basic teaching of S.L.: that each one in the bundle of rights of these committed persons deserves protection." Ibid.

Counsel who appear in these proceedings, of course, also play a critical role in assuring the rights of the committed persons at the center of these hearings. Here, neither county counsel nor the public defender questioned the court about an aspect

of the order clearly contrary to statute. Had either done so, we are confident the court's oral order of discharge would have been corrected to permit K.O.'s release within forty-eight hours with a discharge plan formulated in accordance with N.J.S.A. 30:4-27.18, as required by N.J.S.A. 30:4-27.15(b), instead of precipitating the hurried, oral application by the hospital hours later in order to present the testimony that should have been presented at the initial hearing.

As we noted, despite the errors committed by the judge in first failing to order K.O.'s discharge in accordance with the statute and then placing her on CEPP, K.O. was discharged the day after the hearing in compliance with N.J.S.A. 30:4-27.15(b) and N.J.S.A. 30:4-27.18. Accordingly, because she suffered no unconstitutional extension of her involuntary commitment and the errors here appear sui generis and unlikely to recur, we decline to consider the thorny issues the parties raise as to the hospital's standing to intervene in this matter. Guidance as to those issues is better provided in the context of a live controversy where the several aspects of the problem are more sharply presented.

Appeal dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0681-17T4