736 A.2d 529 (1999)
324 N.J. Super. 519
In the Matter of the COMMITMENT OF W.H.
Superior Court of New Jersey, Appellate Division.
Submitted May 19, 1999.
Decided June 15, 1999.
*530 Ivelisse Torres, Public Defender, for appellant (Richard I. Friedman, Deputy Public Defender, of counsel and on the brief).
Respondent's brief was suppressed.
Before Judges BRAITHWAITE and WECKER.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Appellant W.H., a fifty-one year old man, was ordered temporarily committed to Meadowview Hospital on June 3, 1998. Appellant has a "long psychiatric history" and was committed because "[h]e became non-compliant with his medications." Following a hearing on June 25, 1998, a final order of commitment was entered with a "review in two weeks" so that appellant's medication could be changed. Following his review hearing, appellant was "conditionally discharged" from the hospital.
Appellant now appeals from the commitment order of June 25, 1998, arguing that the State failed to meet its burden of proof that he was a danger to himself, others or property. He also asserts that the State's physician provided a "net opinion" and that this appeal is not moot despite his release from the hospital.
We agree that appellant's release from the hospital has not mooted the controversy. "An involuntary committee's property is subject to a lien for the cost of his hospital care." In Re Commitment of A.A., 252 N.J.Super. 170, 172 n. 1, 599 A.2d 573 (App.Div.1991) (citing N.J.S.A. 30:4-80.1). With such a potential monetary obligation, appellant's appeal is not moot. We also agree that the State failed to meet its burden of proof and now reverse.
*531 To support appellant's commitment, the State's expert testified in part as follows:
Q. Doctor, if the patient were released from a structured setting such as this, would he be a danger to himself or others?
A. Most likely if he's released at this point in time from this facility, he will become non-compliant with his medications, most likely decompensate and require rehospitalization.
Q. What is the hospital's plan toward continued commitment?
A. Continued hospitalization until we can stabilize him some more.
Q. Thank you, Doctor.
THE COURT: Doctor, I don't think you answered the question. The attorney asked whether if he were released from this environment at the present time, would he be a danger to himself or others?
THE WITNESS: He very well could be. He does have a history of violence in the past. That's a likely possibility.
THE COURT: Well, is it a possibility or a probability?
THE WITNESS: Well, at this point in time I really can't tell you with a hundred percent certainty.
THE COURT: I'm not asking for a hundred percent certainty but to a degree of medical certainty.
THE WITNESS: Yes. Yes.
THE COURT: Cross-examine.
CROSS-EXAMINATION BY MR. FRIEDMAN:
Q. Yes, possible, Doctor, or yes, probable?
A. Yes, possible.
Q. Thank you. I have no further questions.
THE COURT: You're saying it's only possible that he would be a danger, not a probability?
THE WITNESS: I don't know that. I really can'tit all depends whether he remains compliant with his medications. If he were to remain compliant with his medications, the likelihood that he would become violent is very very minimal.
THE COURT: No, but the question is, you testified he was brought into the hospital because he was non-compliant.
THE WITNESS: Correct.
THE COURT: If he doesn't comply with his medication, would he then probably be a danger to himself and others?
THE WITNESS: He very well could be, yes.
....
Q. And when he's non-compliant with his medication, would he be able to take care of himself?
A. I don't believe so.
Q. Could he cook for himself, clean for himself?
A. Well, again, that depends on how psychotic he is. He may or may not. But most likely, if he doesn't take his medication, he will become psychotic, and will require rehospitalization.

[emphasis added.]
Following the State's witness, appellant produced his aunt and uncle who both testified that he has never been violent toward "anybody" nor "tried to harm himself." They also stated that appellant cooks and shops for food for himself. Further, both testified that they have frequent contact with appellant and "can tell ... when he stops taking his medication." When appellant stops taking his medications "he walks up and down and he talks to himself." "But he'll still take care of himself as far as cooking is concerned."
In ordering appellant's commitment, the judge found all of the witnesses to be credible, but concluded that appellant would be "a danger to himself and others."
N.J.S.A. 30:4-27.2 defines the terms "dangerous to self" or "dangerous to others or property."
h. "Dangerous to self" means that by reason of mental illness the person has *532 threatened or attempted suicide or serious bodily harm, or has behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical debilitation or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential medical care or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available.
i. "Dangerous to others or property" means that by reason of mental illness there is a substantial likelihood that the person will inflict serious bodily harm upon another person or cause serious property damage within the reasonably foreseeable future. This determination shall take into account a person's history, recent behavior and any recent act or threat.
To enter an order of involuntary commitment, the court must find by clear and convincing evidence that the patient is mentally ill and that the illness causes the patient to be dangerous to himself, others or property. R. 4:74-7(f)(1). Our review of this record convinces us that the State failed to meet its burden of proof. The doctor's testimony was equivocal in that appellant would only "possibly" be a danger to himself or others if he again became non-compliant with his medication.
At one point in the hearing when asked if appellant would be a danger to himself if he stopped taking his medicine, the doctor answered: "[T]hat depends on how psychotic he is. He may or may not. But most likely, if he doesn't take his medication, he will become psychotic, and will require rehospitalization." The doctor also testified that appellant had a history of violence, but no facts were presented to support that conclusion.
Further, appellant's witnesses testified that he had never been violent and the judge found them credible. Evidence that appellant, when he does not take his medication, is delusional and talks to himself is insufficient to meet the burden of finding by clear and convincing evidence that he will be a danger to himself or others "within the reasonably foreseeable future." N.J.S.A. 30:4-27.2h and i. See In Re Commitment of Robert S., 263 N.J.Super. 307, 311, 622 A.2d 1311 (App.Div.1992); cf. In Re Commitment of A.A., supra, 252 N.J.Super. at 179, 599 A.2d 573 (holding the wife's testimony that husband's release would cause psychological harm to other family members was insufficient to support commitment court's finding that husband would cause serious bodily harm to another person).
"Evidence is `clear and convincing' when it produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In Re Jobes, 108 N.J. 394, 407, 529 A.2d 434 (1987)(citing State v. Hodge, 95 N.J. 369, 376, 471 A.2d 389 (1984) (citations omitted)). The proofs here do not meet this standard.
Reversed.