# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3469-23

IN THE MATTER OF THE
COMMITMENT OF L.J.[1]

_____

Submitted June 3, 2025 – Decided June 18, 2025

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ESCC-001148-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant L.J. (Thomas G. Hand, Assistant Deputy Public Defender, on the brief).

Jerome M. St. John, Essex County Counsel, attorney for respondent State of New Jersey, County of Essex (Thomas M. Bachman, Assistant Essex County Counsel, on the brief).

PER CURIAM

L.J., an adult male, appeals from a June 5, 2024 order involuntarily committing him to Newark Beth Israel Medical Center (Beth Israel).  Although

---

[1]  We use initials to identify appellant because records of civil commitment proceedings are excluded from public access under Rule 1:38-3(f)(2).

L.J. has been discharged from Beth Israel, he seeks reversal of the order and removal of the involuntary commitment from his record. We affirm.

I.

We discern the salient facts from the record. On May 22, 2024, L.J. was transported to Beth Israel for an involuntary screening after he was found wandering while exhibiting disorganized and paranoid behavior.[2]

At the June 5, 2024 hearing, Dr. Samuel Sostre,[3] L.J.'s treating psychiatrist, testified he diagnosed L.J. with schizophrenia based upon his examination.[4] Dr. Sostre explained that L.J.'s symptoms show that he "remains

---

[2] L.J.'s medical records from Beth Israel are not contained in the record.

[3] Dr. Sostre's last name is incorrectly spelled as "Dr. Salters" in the June 5, 2024 hearing transcript and in appellant's merits brief.

[4] According to DSM-V,

> The characteristic symptoms of schizophrenia involve a range of cognitive, behavioral, and emotional dysfunctions, but no single symptom is pathognomonic of the disorder. The diagnosis involves the recognition of a constellation of signs and symptoms associated with impaired occupational or social functioning. Individuals with the disorder will vary substantially on most features, as schizophrenia is a heterogeneous clinical syndrome.

A-3469-23

paranoid, guarded, irritable, and appears to be internally preoccupied." Dr. Sostre testified L.J.'s "judgment would be considered . . . poor . . . despite being compliant with his medications." Dr. Sostre opined that "[d]espite being verbally irritable at times, [L.J.] has exhibited no aggravated or threatening behaviors." Dr. Sostre stated that L.J. was currently being treated with Risperdal.[5]

---

> [Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. text rev. DSM-5-TR 2022) and (5th ed. DSM-5 2013), Section II Schizophrenia Spectrum and Other Psychotic Disorders (enumerating diagnostic features of schizophrenia).]

[5] Risperdal is the brand name for Risperidone. The Cleveland Clinic states that Risperidone:

> treats schizophrenia, bipolar disorder, and autism spectrum disorder. It works by balancing the levels of dopamine and serotonin in your brain, substances that help regulate mood, behaviors, and thoughts. It belongs to a group of medications called antipsychotics. Antipsychotic medications can be used to treat several kinds of mental health conditions.
>
> [Drugs, Devices & Supplements: Risperidone Tablets, Cleveland Clinic (2025), https://my.clevelandclinic.org/health/drugs/20391-risperidone-tablets.]

3

Based on his examination, Dr. Sostre concluded, to a degree of medical certainty, that L.J. suffered from mental illness, was currently unable to care for himself, and was unable to maintain a safe living environment. Dr. Sostre testified that L.J. was currently unable to provide his mother's address or her phone number. Dr. Sostre opined that it was not possible for L.J. to be in a less restrictive environment than a psychiatric hospital at the time of the hearing. Dr. Sostre recommended L.J.'s "continued commitment with a possible transfer to long-term care with a [four]-week review."

L.J.'s attorney did not cross-examine Dr. Sostre. L.J. testified on his own behalf with the aid of a French interpreter as follows:

> I heard what the doctor said. He said that I suffer from paranoia. He said that I am schizophrenia [sic]. I will not say that. That—that's the first time in my life that I've heard that I have those issues. I would like—I would like the doctor to explain to me when a person is paranoid, when person suffer from schizophrenia. Then, I will know if I am paranoid if I suffer from schizophrenia.
>
> And I give my mother's name. I give my address. The only thing I did not give, the phone number of my relatives, because I do not know the phone number on top of my head. He said that I cannot leave in a—environment. As a human being, everything that is—everything that is existing, everything that is fair, everybody—everybody, every human being should be—to live in a safe environment. That's all I wanted to say.

4

L.J. did not present any fact or expert witnesses to testify on his behalf.

Each counsel gave a closing statement. L.J.'s counsel argued it would be "incredibly unfair" for L.J. to remain hospitalized merely because he may not have a "safe place" to stay outside of the hospital. L.J.'s counsel also requested the judge issue an order of conditional extension pending placement (CEPP)[6] in accordance with Rule 4:74-4(h)(2)[7] if the judge was not inclined to discharge L.J. from Beth Israel.

---

[6] CEPP status applies to "individuals who are legally entitled to leave a mental hospital because they are not considered dangerous" but "'are incapable of competently exercising' the right to be discharged because of a diminished capacity to survive in the outside world." In re Commitment of M.G., 331 N.J. Super. 365, 378 (App. Div. 2000) (quoting In re Commitment of S.L., 94 N.J. 128, 139 (1983)). Such individuals remain confined until the State arranges for appropriate placement. Ibid.; see also R. 4:74-7(h)(2).

[7] Rule 4:74-7(h)(2) defines an order of CEPP as:

> If a patient otherwise entitled to discharge from an inpatient facility cannot be immediately discharged due to the unavailability of an appropriate placement, the court shall enter an order conditionally extending the patient's hospitalization and scheduling a placement review hearing within [sixty] days thereafter. If the patient is not sooner discharged, a second placement review hearing shall be held no later than six months after the initial placement review hearing and subsequently at no greater than six-month intervals. At all placement review hearings the court shall inquire

A-3469-23

After both sides rested, the judge questioned the social worker who was present in the courtroom if she had any contact with L.J.'s family, and she answered in the negative. The social worker was not sworn in. The social worker told the judge that L.J. has always provided his address, but it was unable to be confirmed, and he did not provide any phone numbers. The judge gave the attorneys the opportunity to question the social worker. L.J.'s counsel did briefly question the social worker with regard to CEPP. The social worker responded, "[y]es. That is something [L.J.] can do."

---

into and receive evidence of the patient's placement as is necessary to support the entry of an order conditionally extending the patient's hospitalization. At all placement review hearings, the hospital employee who has primary responsibility for placing the patient shall prepare a written report and shall make it available to the court and all counsel no later than one business day prior to the hearing. The report shall be in a form prescribed by the Department of Human Services and subject to approval by the Administrative Director of the Courts, and designed to minimize the burden on hospital administrative and clinical resources while still accomplishing its objective. If the court is advised at a hearing that an appropriate placement is available, it shall forthwith order such placement. If an appropriate placement becomes available during the interval between scheduled hearings, the patient may be administratively discharged to said placement.

Based on the record, the judge found by clear and convincing evidence that L.J. suffers from a mental illness. In his oral decision, the judge found Dr. Sostre was "convincing" and "credible." The judge also found the social worker was "credible." The judge determined there was insufficient information provided about L.J.'s family or "where he's going to end up" to justify CEPP.

The judge continued L.J.'s commitment and scheduled a four-week review for July 3, 2024. The judge also ruled that L.J. can be "discharged at any point that the doctor thinks is appropriate." A memorializing order was entered, which noted the judge found L.J. was "[w]andering streets," unaware of prior hospital stays, "[r]emains guarded, paranoid, and internally preoccupied." The order noted L.J. is "psychotic," has poor judgment, is compliant with his medication, has good impulse control, "[s]till a danger to self," and no less restrictive setting is appropriate. On July 3, 2024, L.J. was discharged from Beth Israel, with no further details appearing in the record. This appeal followed.

L.J. presents three issues for our consideration:

> (1)    the judge erred as a matter of law when he ordered L.J.'s commitment because the State failed to prove by clear and convincing evidence that L.J. was unable to care for himself as required by N.J.S.A. 30:4-27.15 and 30:4-27.2(m);

A-3469-23

(2)   L.J. was deprived of his due process rights when the judge impermissibly advanced the State's case by obtaining additional testimony from an unidentified and unsworn social worker after closing arguments; and

(3)   the judge erred in finding L.J. required continued commitment, failed to make any findings of fact, relied on unsworn witness testimony, and relied on the absence of evidence to support the State's case for involuntary civil commitment.

The State counters L.J.'s appeal should be dismissed as moot because L.J. was discharged on July 3, 2024, and this case implicates no new issue of law and only concerns the sufficiency of the evidence.

II.

Our review of a judge's determination to commit an individual is "extremely narrow," In re D.C., 146 N.J. 31, 58 (1996), and it may only be modified where "the record reveals a clear mistake," In re Civ. Commitment of R.F., 217 N.J. 152, 175 (2014). A judge's determination should not be disturbed if the judge's findings are "supported by 'sufficient credible evidence present in the record.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

We review a decision continuing an individual's civil commitment for an abuse of discretion. D.C., 146 N.J. at 58-59. We "reverse[] only when there is clear error or mistake." In re Commitment of M.M., 384 N.J. Super. 313, 334

(App. Div. 2006) (citations omitted). The trial judges who hear these cases "generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" R.F., 217 N.J. at 174 (quoting In re Civ. Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). However, we "must consider the adequacy of the evidence." M.M., 384 N.J. Super. at 334 (citations omitted). And, to the extent questions presented are procedural or legal ones, our review is de novo. In re Commitment of J.L.J., 196 N.J. Super. 34, 49 (App. Div. 1984) (citing State v. Steele, 92 N.J. Super. 498, 507 (App. Div. 1966)).

"Involuntary commitment to a mental hospital is state action which deprives the committee of important liberty interests and, as such, triggers significant due process requirements." In re Commitment of Raymond S., 263 N.J. Super. 428, 431 (App. Div. 1993) (citation omitted). As a result, our Legislature and Supreme Court have promulgated N.J.S.A. 30:4-27.1 to -27.23 and Rule 4:74-7 "to ensure that no person is involuntarily committed to a psychiatric institution without having been afforded procedural and substantive due process." Ibid.

An adult is considered "in need of involuntary treatment" if they are

an adult with mental illness, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to accept appropriate treatment voluntarily after it has been

9

offered, needs outpatient treatment or inpatient care at a short-term care or psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the person's mental health care needs.

[N.J.S.A. 30:4-27.2(m); see R. 4:74-7(f)(1).]

"Mental illness" is defined as "a current, substantial disturbance of thought, mood, perception, or orientation which significantly impairs judgment, capacity to control behavior, or capacity to recognize reality," not including "simple alcohol intoxication, transitory reaction to drug ingestion, organic brain syndrome, or developmental disability" unless that disability results in the severity of impairment described in the statute.  N.J.S.A. 30:4-27.2(r).

A judge may not commit a person to a psychiatric facility "without proof by clear and convincing evidence that the individual has a mental illness, and the mental illness causes the patient to be dangerous to self, to others, or to property."  Raymond S., 263 N.J. Super. at 431 (citing N.J.S.A. 30:4-27.9(b); N.J.S.A. 30:4-27.15(a); R. 4:74-7(f)).  Clear and convincing evidence "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  In re Purrazzella, 134 N.J. 228, 240 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App. Div. 1960)).

If a judge "finds that there is probable cause to believe that [a] person . . . is in need of involuntary commitment to treatment," the judge "shall issue a temporary order authorizing the assignment of the person to an outpatient treatment provider or the admission to or retention of the person in the custody of the facility." N.J.S.A. 30:4-27.10(g); see R. 4:74-7(c). Commitment must be "both appropriate to the person's condition and . . . the least restrictive environment, pending a final hearing." N.J.S.A. 30:4-27.10(g); see R. 4:74-7(c).

## A.

We first address the State's mootness argument. "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). "Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).

Our courts generally consider appeals challenging civil commitment even after the appellant's release has mooted relief because of the importance of the individual's liberty interest and the likelihood of repetition of error that will escape review.  See In re Commitment of N.N., 146 N.J. 112, 124 (1996); see also In re Commitment of P.D., 381 N.J. Super. 389, 391-92 (App Div. 2005), certif. granted and remanded, 186 N.J. 251 (2006).  We reject the State's argument that L.J.'s appeal should be dismissed as moot.

B.

We next address L.J.'s argument that the State failed to prove by clear and convincing evidence that he was unable to care for himself.  L.J. contends Dr. Sostre's opinion that L.J. was a danger to himself constituted a net opinion and lacked the requisite basis in fact required by N.J.R.E. 703.  According to L.J., Dr. Sostre only testified L.J. was paranoid, had poor judgment, and poor insight, but did not opine that L.J. was unable to satisfy his need for "nourishment" as required by N.J.S.A. 30:4-27.2(h).

L.J. also contends Dr. Sostre did not opine that he was unable to satisfy his need for essential medical care as required by N.J.S.A. 30:4-27.2(h).  L.J. asserts his failure to provide an address does not "equate" to the failure to provide shelter under N.J.S.A. 30:4-27.2(h), and Dr. Sostre failed to explain how

12

L.J.'s inability to care for himself created a risk that it was "probable that substantial bodily injury, serious physical harm, or death will result within the reasonably foreseeable future" as defined by the statute.

L.J. was committed to Beth Israel after he was found wandering. He presented as paranoid, guarded, irritable, and internally preoccupied. Dr. Sostre diagnosed L.J. with schizophrenia, after observing and treating L.J. during a two-week hospital stay. L.J. does not challenge that diagnosis on appeal. Moreover, Dr. Sostre's testimony and opinions were not subject to cross-examination and are therefore unrefuted. Thus, the judge's finding that L.J. suffered from a mental illness pursuant to N.J.S.A. 30:4-27.2(r) is based upon substantial credible evidence in the record. L.J.'s condition required medication for his acute symptoms. Until stabilized, L.J. was a danger to himself and others.

We recognize a mere possibility of danger is not enough to satisfy the requirements of Rule 4:74-7(f). See In re Commitment of W.H., 324 N.J. Super. 519, 523 (App. Div. 1999). In W.H., the doctor opined the patient would "possibly" be a danger to himself or others if he were to stop taking his medication. Ibid. The doctor also testified the patient had a history of violence but did not present any facts to support that conclusion. Id. at 524. According to witnesses the trial judge found credible, the patient had never been violent,

13

even when he was not taking his medication. Ibid. We reversed the trial court's order continuing his commitment, holding the mere possibility of danger with nothing more does not rise to the level of clear and convincing. Ibid.

Here, in contrast, Dr. Sostre did not testify L.J. would "possibly" be a danger to himself and others if he was discharged; rather, Dr. Sostre testified he would, in fact, be a danger if he was discharged. In determining whether a patient poses a danger to oneself, a judge shall consider "a person's history, recent behavior, and any recent act, threat, or serious psychiatric deterioration." N.J.S.A. 30:4-27.2(h). The judge's determination that the State proved by clear and convincing evidence that L.J. had a mental illness and posed a danger to himself is supported by sufficient credible evidence. We discern no error.

## C.

We are unconvinced that Dr. Sostre's testimony constituted a "net opinion" as it was predicated on his own personal observations and examinations of L.J. over a two-week period and was permissible under N.J.R.E. 703.[8] The

---

[8] N.J.R.E. 703 sets forth that

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the proceeding. If of a type reasonably relied upon by

A-3469-23

"net opinion rule . . . forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data."  Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)).  We conclude Dr. Sostre's opinion was supported by competent evidence.  His basis for determining L.J. was a danger to himself was based on L.J.'s treatment for his schizophrenia and being prescribed Risperdal.  As stated, Dr. Sostre also gained knowledge of L.J.'s condition through his personal observation of him at Beth Israel in the days preceding the hearing.

Moreover, Dr. Sostre was free to give his opinions on the ultimate issues in the case—L.J.'s dangerousness to himself.  The determination of dangerousness to oneself "shall take into account a person's history, recent behavior and any recent act, threat, or serious psychiatric deterioration."  N.J.S.A. 30:4-27.2(h).

Dr. Sostre's expert opinion and testimony as L.J.'s treating psychiatrist was not based "merely on unfounded speculation" or "unquantified possibilities."  Townsend v. Pierre, 221 N.J. 36, 55 (2015) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).  N.J.R.E. 702 permits a

experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

15

qualified expert witness to testify in the form on an opinion or otherwise. Dr. Sostre's qualifications as an expert were stipulated to at the hearing. His testimony did not violate the prohibition against net opinions. Thus, we affirm the entry of the June 5, 2024 order of continued involuntary commitment of L.J. at Beth Israel.

## D.

Next, L.J. argues the judge violated his due process rights by eliciting "additional testimony on behalf of the State's case in the form of an unidentified and unsworn social worker" after closing arguments. Because L.J. did not object at the hearing, we review for plain error.

Under the plain error standard, L.J. carries the burden of demonstrating that the error was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. "The mere possibility of error is insufficient for reversal," N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 622 (App. Div. 2010), and "[r]elief under the plain error rule, R. 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed,'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). "Generally, issues not raised below, even constitutional issues, will not ordinarily be considered on appeal unless they are jurisdictional in

nature or substantially implicate public interest." State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006).

In addition, a trial judge has "wide discretion in controlling the courtroom and the court proceedings," and any "[a]lleged misconduct by a trial judge must be reviewed within the context of the entire record in order to determine whether it had prejudicial impact." D.G. ex rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 26 (App. Div. 2008). "In a bench trial . . . , a judge may examine witnesses to clarify testimony, aid the court's understanding, elicit material facts, and assure the efficient conduct of the trial." D.M.R. v. M.K.G., 467 N.J. Super. 308, 320-21 (App. Div. 2021) (first citing State v. Medina, 349 N.J. Super. 108, 131 (App. Div. 2002); and then citing N.J.R.E. 614).

Here, the judge questioned the social worker and L.J.'s counsel asked two follow-up questions. The exchange was as follows:

> [The court]: Before—before I make the decision, you are the social worker here? Could you state your name for the record? . . . . And respectfully, . . . . Have you had any contact with his family?
>
> . . . .
>
> [Social Worker]: I—no, I have not had any contact with the family.
>
> [The court]: Any family members—I mean, so the information that he's provided to you, was that—

 A-3469-23

information?  [L.J.]'s claiming that he did . . . .  He's stating he's given you his mother's information.  Is that accurate?

[Social Worker]:  [L.J.] has always provided his address, which we are not able to confirm.  He has not provided any phone numbers.

[The court]:  All right. So let [the court] apologize to the attorneys.  So if you want to ask the social worker any questions, please do.

[L.J.'s Counsel]:  Hypothetically, if [L.J.] is converted to [CEPP] . . . or shelter in the community . . . .

[Social Worker]:  Yes. That is something [L.J.] can do.

[L.J.'s Counsel]:  And would you feel comfortable— getting in contact with myself and my office—assist with that?

[Social Worker]:  Yes, I would.

[L.J.'s Counsel]:  I have no other questions, Your Honor.  Thank you.

Here, the judge merely asked two open-ended questions of the social worker and provided both counsel with the opportunity to question the social worker before rendering his opinion.  L.J.'s counsel did not object to the judge asking questions of the social worker.  Moreover, L.J.'s counsel affirmatively asked for, and was given the opportunity, to question the social worker in the same unsworn manner.

A-3469-23

We have held all witnesses who testify must be "sworn or affirmed." State v. Caraballo, 330 N.J. Super. 545, 554 (App. Div. 2000). See also N.J.R.E. 603 ("Before testifying a witness shall be required to take an oath or make an affirmation or declaration to tell the truth under the penalty provided by law. No witness may be barred from testifying because of religious belief or lack of such belief.")

Based upon our review of the record, we discern no plain error. The questions posed by the judge simply clarified what Dr. Sostre and L.J. testified to regarding his address and phone numbers. The social worker's responses corroborated the sworn testimony presented by Dr. Sostre and L.J. We reject L.J.'s contention that the social worker's responses "address[ed] weaknesses in the State's case." We are convinced the questioning of the social worker had no prejudicial impact on the outcome of the hearing and was not clearly capable of producing an unjust result under Rule 2:10-2.

### III.

Finally, L.J. argues the judge erred in requiring his continued commitment and failed to make the requisite findings of fact and conclusions of law. L.J. contends the judge failed to detail any facts that Dr. Sostre testified to and

19

improvidently found the "unidentified" social worker to be "credible." L.J. asserts there was insufficient evidence to support his continued commitment.

To support an order continuing a civil commitment, a court must make specific findings and correlate them to the legal standards. In re Commitment of D.M., 313 N.J. Super. 449, 454 (App. Div. 1998). The court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury[.]" R. 1:7-4(a). The court must state the facts forming the basis of its decision and then weigh and evaluate those facts under the governing law "to reach whatever conclusion may logically flow from" those facts, Slutsky v. Slutsky, 451 N.J. Super. 332, 357 (App. Div. 2017), because justice requires that "[a]ll conclusions must be supported," ibid.

We are satisfied the judge complied with Rule 1:7-4. The judge explained what evidence he considered. Saliently, no contradictory evidence was offered to refute Dr. Sostre's testimony and opinions. The judge found L.J. "[r]emains guarded, paranoid, and internally preoccupied," as well as "psychotic" with poor judgment. The judge noted that L.J. could not be treated in a less restrictive setting. The judge gave an explanation that comports with Rule 1:7-4 and in

reaching his conclusion, there existed clear and convincing evidence L.J. was mentally ill and posed a danger to himself, others, or property.

We conclude that L.J.'s remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division